UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SYMONS INTERNATIONAL GROUP, INC., ) <br> BRADFORD T. WHITMORE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CONTINENTAL CASUALTY COMPANY, ) <br> ) <br> Defendant. ) <br> ——————————————————— ) <br> ) <br> CONTINENTAL CASUALTY COMPANY, ) <br> 1911 CORP., ) <br> SUPERIOR INSURANCE GROUP, ) <br> ) <br> Counter Claimants, ) <br> ) <br> vs. ) <br> ) <br> SYMONS INTERNATIONAL GROUP, INC., ) <br> BRADFORD T. WHITMORE, ) <br> ) <br> Counter Defendants. ) <br> ) <br> ——————————————————— ) <br> ) <br> SUPERIOR INSURANCE GROUP, ) <br> BRADFORD T. WHITMORE, ) <br> ) <br> Cross Claimants, ) <br> ) <br> vs. ) <br> ) <br> BOSE MCKINNEY & EVANS LLP, ) <br> CONTINENTAL CASUALTY COMPANY, ) <br> BRADFORD T. WHITMORE, ) <br> SUPERIOR INSURANCE GROUP, ) <br> ) <br> Cross Defendants. ) <br> ) <br> ——————————————————— ) <br> ) | No. 1:01-cv-00799-RLY-MJD |

CONTINENTAL CASUALTY COMPANY, )
1911 CORP., )
)
     Third Party Plaintiffs, )
)
     vs. )
)
ALAN G SYMONS, )
G. GORDON SYMONS, )
GRANITE REINSURANCE COMPANY, )
LTD., )
GORAN CAPITAL, INC., )
SUPERIOR INSURANCE GROUP, )
BOSE MCKINNEY & EVANS LLP, )
ROBERT SYMONS, )
)
     Third Party Defendants. )
)
_____ )
)
Stephen Cleaver, )
Virginia Wright, )
Maroula Kyriacou, )
WILMINGTON TRUST COMPANY, )
SUPERIOR INSURANCE GROUP )
MANAGEMENT, INC., )
)
     Garnishees. )
)

## ORDER ON THIRD PARTY DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND THIRD PARTY PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Third Party Defendant Robert Symons's Motion for Protective Order Under Federal Rule of Civil Procedure 26(c), [Dkt. 651], and Third Party Plaintiff Continental Casualty Company's Motion to Compel Production. [Dkt. 657.] For the reasons that follow, the Court **GRANTS** the motion to compel and **DENIES** the motion for a protective order.

# I.     Background

On July 14, 2014, this Court entered a judgment in favor of Third Party Plaintiff Continental Casualty Company ("CCC" or "Plaintiff") and against Robert Symons ("Symons" or "Defendant"), as successor in interest of G. Gordon Symons, in the amount of $34,258,078.00 plus interest. [Dkt. 557 at 2.] Two weeks later, Symons appealed that judgment to the Seventh Circuit. [Dkt. 564.] Symons did not seek a stay of enforcement or post a bond, [*see* Dkt. 656 at 4], and CCC was accordingly permitted to seek execution of the judgment while the appeal was pending. *See* Fed. R. Civ. P. 62. To that end, CCC filed a motion for proceedings supplemental, [Dkt. 576], which the Court granted in part and denied in part on December 5, 2014. [Dkt. 637.]

Pursuant to the Court's order, CCC served various discovery requests on Symons on December 8, 2014. [Dkt. 651 ¶ 3 (Symons's Mot. for Protective Order); Dkt. 656 at 4 (CCC's Mem. in Opp'n to Mot. for Protective Order).] CCC specifically asked Symons to appear and produce documents at the Chicago, Illinois office of CCC's counsel. [*Id.* ¶ 3, 6] Symons did not respond to the requests. [Dkt. 656 at 4.]

At the same time, CCC sought to execute its judgment by pursuing certain of Symons's assets located in Canada. CCC thus filed a Statement of Claim in Ontario, Canada on November 20, 2014. [Dkt. 651-1 (Ex. A. to Symons's Mot. for Protective Order).] The claim identified Symons as a defendant and explained that CCC sought to enforce this Court's judgment against him. [*See id.*] It also noted that this Court's judgment "is a final decision of the Indiana Court, notwithstanding that an appeal is pending, since no bond has been posted in connection with the appeal." [*Id.* ¶ 16.] Symons responded to the claim on January 16, 2015 and has actively opposed CCC's attempt to execute its judgment. [*See* Dkt. 656-2 (Symons's Statement of Defenses).]

Also in Canada, CCC filed a motion seeking to compel the probate of G. Gordon Symons's will. [*See* Dkt. 651-2 (CCC's Notice of Mot.).] The Canadian court granted CCC's request, but Symons has challenged that decision on the grounds that probate is premature while CCC's judgment is on appeal. [*See* Dkt. 656-3 (Ex. C. to CCC's Mem. in Opp'n to Mot. for Protective Order).]

On January 26, 2015, Symons filed the currently pending motion for a protective order. [Dkt. 651.] He argues that it is improper for CCC to simultaneously attempt to enforce its judgment in both the United States and Canada. [*See id.*] He also notes that he is a Canadian resident and citizen, and he asserts that it would therefore be unduly burdensome to produce documents or sit for a deposition in Chicago or elsewhere in the U.S. [*See id.*]

On February 10, 2015, CCC responded to Symons's motion, [Dkt. 656], and two days later, it filed the currently pending motion to compel. [Dkt. 657.] CCC asserts that Symons has no basis for requesting a protective order and asks the Court to order production of all documents that CCC has requested within one week of the Court's order. [*See* Dkts. 657 & 657-4.] The parties briefed the competing motions, and the Court now addresses the parties' arguments.

## II.    Discussion

Under Rule 26, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The party from whom discovery is sought bears the burden to show that such a protective order is warranted. *See, e.g.*, *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The party seeking a protective order has the burden to show good cause for it."). The Court must also consider whether limiting discovery is appropriate in light of factors such as "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Under Rule 37, a "party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). The party resisting such a motion bears the burden to show that a particular discovery request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). That party must show "with specificity" that the request is inappropriate. *Id.* General assertions of hardship or conclusory statements that the requested discovery is irrelevant or overly burdensome will not suffice. *See id.*; *see also Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) (requiring the objecting party to "specify the nature of the burden and provide specific explanations" before limiting discovery).

Defendant in this case seeks a protective order and opposes Plaintiff's motion to compel, and Defendant accordingly bears the burden to show why the requested discovery is improper. In his attempts to meet this burden, Defendant advances essentially three arguments: First, he contends that CCC's efforts to execute its judgment in Canada divest this Court of the authority to oversee CCC's proceedings supplemental. [*See* Dkt. 651 at 2-3, 10.] Second, he contends that Canadian law does not allow for execution of a judgment while an appeal is pending, such that CCC's purported choice to proceed under Canadian law prohibits execution of its judgment. [*See* Dkt. 651 at 3.] Finally, he contends that requiring production of documents or the taking of a deposition in the United States would be unduly burdensome for a Canadian resident such as himself. [*See* Dkt. 651 at 3-5.] The Court addresses the arguments in turn.

### A. This Court's Authority

Defendant first argues that, by filing the above-described claims against Robert Symons in Canada, CCC "has prejudiced (waived) its right to seek such discovery through this Court."

[Dkt. 651 ¶ 5.] In his reply in support of a protective order, Defendant clarifies that he is "not contesting this Court's personal jurisdiction over the deceased [G. Gordon Symons] or over [Robert Symons] as Executor." [Dkt. 659 at 2.] Nonetheless, both his original motion and his response to Plaintiff's motion to compel assert that "[t]o enforce any orders against Robert Symons, or otherwise compel his presence in Indiana or the production of documents in the United States, is an inappropriate collateral attack on the Canadian jurisdiction, process and law that CCC voluntarily chose to use." [Dkt. 651 ¶ 5; *see also* Dkt. 668 ¶ 11.] Thus, regardless of whether the argument is phrased in terms of "personal jurisdiction" or otherwise, Defendant apparently contends that this Court lacks authority to order discovery of the sort sought by CCC.

This argument is unpersuasive. First, Defendant has cited no case, statute, or rule of procedure indicating that a party seeking execution of a judgment may "waive" its right to execution in one jurisdiction by pursuing simultaneous execution in other jurisdictions. [*See* Dkt. 651 ¶ 5; Dkt. 668 ¶ 11.] Because Defendant bears the burden to show that the discovery at issue is improper, *see Cunningham*, 255 F.R.D. at 478; *Felling* 211 F.R.D. at 554, this lack of support is a telling indication that Defendant's proposed protective order is not warranted.

Next, nothing in the rules of civil procedure forbid a judgement creditor such as CCC from seeking execution of a judgment in multiple jurisdictions: Defendant himself acknowledges that "pursuing collection in multiple jurisdictions is not problematic," [Dkt. 659 at 2], and enforcement in multiple jurisdictions is specifically authorized by statute. *See* 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district[.]"). It is thus unsurprising that federal courts have repeatedly accepted that enforcement in multiple jurisdictions is appropriate. *See,*

*e.g.*, *Gagan v. Monroe*, No. 2:87-CV-732, 2014 WL 5817560, at *1 (N.D. Ind. Nov. 10, 2014) (noting that judgment creditor had "attempted to collect the judgment in multiple jurisdictions including California, Nevada, Oklahoma, Pennsylvania, and Arizona"); *Clinton v. Hendricks & Lewis*, PLLC, No. C11-1142RSL, 2012 WL 627997, at *2 (W.D. Wash. Feb. 27, 2012) ("A judgment creditor may enforce a judgment through one or more supplemental collection proceedings filed anywhere the judgment debtor has property subject to levy.").[1] Defendant has cited no authority that the rule should be any different when one of the jurisdictions at issue is a foreign country, and Defendant has thus failed to meet his burden to show that the Court should limit CCC's proposed discovery.

Finally, accepting Defendant's argument would produce absurd and unworkable results. As CCC notes, a finding that execution procedures in foreign countries preclude simultaneous execution procedures in this country would allow a judgment debtor to "evade the U.S. court's ongoing jurisdiction" simply by "export[ing] assets to foreign jurisdictions." [Dkt. 672 at 7.] As a result, no judgment creditor would ever be able to collect the judgment to which it was entitled. [*See id.*] Indeed, the court in *Clinton* commented on a similar concern: there, the court noted that proceedings supplemental should not be considered "duplicative" for "purposes of the prohibition against claims splitting and/or the doctrine of res judicata. Otherwise judgment debtors who hold assets in multiple jurisdictions could force a creditor to choose one district in

---

[1] The structure of the Federal Rules also indicates that this must be the proper result: Rule 69 provides for proceedings supplemental and states that "[a] money judgment is enforced by a writ of execution." Fed. R. Civ. P. 69(a). A district court, however, may only issue such writs with respect to property located in the state in which the district court resides. *See, e.g.*, *Hoffart v. Wiggins*, 577 F. App'x 384, 387 & n.8 (5th Cir. 2014); *Gagan v. Monroe*, 269 F.3d 871, 877 (7th Cir. 2001). Thus, in order for a judgment creditor to enforce its judgment throughout the country—as allowed under 28 U.S.C. § 1963—or internationally—as appropriate under cases such as *Clinton*—the creditor must also be allowed to initiate proceedings supplemental throughout the country. The creditor, that is, must be allowed to obtain writs of execution in each district in which the judgment debtor has property. Accordingly, the initiation of proceedings supplemental in one district does not impair the ability of the creditor to initiate such proceedings in other districts, and, by similar reasoning, CCC's decision to conduct proceedings supplemental in Canada does not impair its right to conduct proceedings supplemental through this Court.

which to seek execution and forego any amounts that cannot be recovered in that district."
*Clinton*, 2012 WL 627997, at *2 (W.D. Wash. Feb. 27, 2012). The same considerations are
relevant here: CCC cannot be forced to choose one country—Canada or the United States—in
which to execute its judgment. CCC is entitled to collect Defendant's assets wherever they are
located, *see id.*; *see also* 28 U.S.C. § 1963, and CCC's choice to execute its judgment in Canada
does not preclude simultaneous execution of its judgment before this Court. As a result,
Defendant's argument on this point presents no basis for limiting CCC's discovery in aid of its
execution.

### B. Execution of Judgments Under Canadian Law

Defendant next contends that even if CCC is not precluded from conducting its
proceedings supplemental, such proceedings must be conducted in accordance with the law of
Ontario and Canada. In particular, Defendant argues that, "[g]iven CCC's affirmative choice to
avail itself of the Canadian laws and processes in efforts to execute upon its judgment, Canadian
law controls." [Dkt. 668 ¶ 11.] Defendant then contends that Canadian law "affords an automatic
stay of execution of a monetary judgment pending appeal," [Dkt. 651 ¶ 3], such that any
"execution/proceedings supplemental is/are premature" until the Seventh Circuits renders its
decision on Defendant's appeal. [*Id.* ¶ 5.]

Defendant cites no authority for the proposition that pursuing execution of a judgment in
one jurisdiction mandates that a court in a separate jurisdiction follow the law of the first
jurisdiction. [*See* Dkt. 668 ¶ 11.] In fact, Defendant himself notes that "both U.S. and Canadian
courts have held that procedural matters are generally governed by the laws of the forum in
which the procedures are undertaken." [Dkt. 659 at 2-3 (Def.'s Reply in Supp. of Protective
Order).] In this case, CCC has served its discovery requests pursuant to the order of this Court,

[*see* Dkt. 637], and the procedural rules of this forum will—by Defendant's own assertion—govern these proceedings. These rules, in turn, allow CCC to execute its judgment even while Defendant's appeal is pending, *see* Fed. R. Civ. P. 62, and Defendant's argument thus presents no basis for limiting discovery related to that execution.

In addition, even if the Court were inclined to follow Canadian law, the Court would not reach the result Defendant seeks. This is because courts in Ontario frequently respect and enforce foreign judgments of the sort that CCC has obtained. In *Mill Valley Bamboo Associates, LLC v. D.T.I. Diversified Transportation Inc.*, for instance, the court noted that "[a] foreign judgment will be recognized in Ontario if it is a final in personam judgment for a definite sum of money given by a court that had jurisdiction to issue the judgment." 2006 CarswellOnt 7424, para. 15 (Can. Ont. Sup. Ct.) (WL). In such circumstances, "principles of comity" promote enforcement of the foreign judgment. *See id.* para. 18.

In this case, it is undisputed that CCC has obtained a "judgment for a definite sum of money," [*See* Dkt. 557 at 2 (entering judgment in the amount of $34,258,078.00)], and it is undisputed that this Court had jurisdiction to enter that judgment. [*See* Dkt. 659 at 2 ("[Defendant is] not contesting this Court's personal jurisdiction over the deceased [G. Gordon Symons] or over [Robert Symons] as Executor.").] The only issue is thus whether the judgment is "final." *See Mill Valley*, 2006 CarswellOnt 7424, para 15.

A U.S. court's judgment is considered "final" in Canada if "the court that pronounced the judgment no longer has jurisdiction to abrogate or vary it." *Oz Optics Ltd. v. Dimensional Communications Inc.*, 2004 CarswellOnt 4551, para. 25 (Can. Ont. Sup. Ct.) (WL). In the U.S., "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case

involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Here, Symons has filed a notice of appeal in which he argues that this Court's judgment was erroneous. [Dkt. 562 ("Third-Party Defendants . . . hereby appeal to the United States Court of Appeals for the Seventh Circuit from the AMENDED FINAL JUDGMENT entered by the Court on July 14, 2014, ECF#557").] This Court thus no longer has jurisdiction over the amended final judgment, *see Griggs*, 459 U.S. at 58, and this judgment is therefore considered final for the purposes of its enforcement in Canada. *See Oz Optics*, 2004 CarswellOnt 4551, para. 25. As a result, an Ontario court would enforce the judgment, *see Mill Valley*, 2006 CarswellOnt 7424, para. 15, and Canadian law thus does not support limiting CCC's proposed discovery in aid of that enforcement.

Other Canadian case law supports this conclusion. In particular, the *Oz Optics* court relied heavily on *Four Embarcadero Center Venture v. Mr. Greenjeans Corp.*, in which the Ontario court elaborated on the "finality" necessary for enforcement of a foreign judgment. 1988 CarswellOnt 378 (Can. Ont. H.C.) (WL). The court wrote that the first consideration for "determining whether an action will lie on a foreign money judgment" is "whether or not the judgment may be abrogated or varied or the issues re-heard, by the court that pronounced it." *Id.* para. 79. To establish that this condition is satisfied, "[i]t is not necessary for the plaintiff to show that the judgment cannot be varied or re-tried by any other means—including on appeal." *Id.* Hence, "an action may be commenced in Ontario to enforce a foreign money judgment that is final in the above sense, notwithstanding that it is under appeal where there is no stay of enforcement so that under the foreign law it may be enforced notwithstanding pendency of an appeal." *Id.* para. 81. If, that is, "the judgment may be enforced in the foreign jurisdiction there is no sound reason of justice why it should not be enforced in Ontario." *Id.*

As noted above, Defendant in this case has not posted a bond or moved for a stay. CCC's judgment may thus be enforced in the U.S., *see* Fed. R. Civ. P. 62, and it may therefore be enforced in Ontario as well, "notwithstanding that it is under appeal." *Four Embarcadero*, 1988 CarswellOnt 378, para. 81.

To resist this conclusion, Defendant cites Rule 63.01 of Ontario's rules of civil procedure. [Dkt. 651 ¶ 4.] That rule provides:

> 63.01 Automatic Stay on Delivery of Notice of Appeal. . . . The delivery of a notice of appeal from an interlocutory or final order stays, until the disposition of the appeal, any provision of the order for the payment of money, except a provision that awards support or enforces a support order.

Rules of Civil Procedure—Ont. Reg. 194, R.R.O. 1990, Reg. 194, s. 63.01. Because Defendant has appealed the judgment in favor of CCC, Defendant contends that an automatic stay has been imposed and the judgment therefore "cannot be enforced or executed." [Dkt. 651 ¶ 4.]

This rule, however, is inapplicable in this case. The Ontario rules of civil procedure state that they apply to "civil proceedings in the Court of Appeal and in the Superior Court of Justice[.]" Rules of Civil Procedure—Ont. Reg. 194, R.R.O. 1990, Reg. 194, s. 1.02. Thus, when Rule 63.01 states that an automatic stay results from the "delivery of a notice of appeal from an interlocutory or final order," Rules of Civil Procedure—Ont. Reg. 194, R.R.O. 1990, Reg. 194, s. 63.01, the rule refers only to an appeal from an order of the Ontario Superior Court to the Ontario Court of Appeal; an appeal of a *foreign* judgment to a *foreign* court does not fall within the scope of the rule.

The Ontario court's discussion in *Four Embarcadero* is consistent with this conclusion. There, the plaintiffs obtained a judgment from a California state court and the defendants appealed. *Four Embarcadero Center Venture Ltd. v. Mr. Greenjeans Corp.*, 1987 CarswellOnt 394, para. 1 (Can. Ont. H.C.) (WL). California law provided for a stay of enforcement only upon

motion or upon posting of a bond, and the defendants did not obtain such a stay. *Id.* para. 8. The plaintiffs then tried to enforce their judgment in Ontario and asked the Ontario court to order discovery in aid of that enforcement. *Id.* at para. 1-2. In response, the defendants argued that Rule 63.01 precluded enforcement while their appeal was pending:

> An appeal in this Court from judgments of the type granted in the California proceedings would invoke the automatic stay provided in our [Rule 63.] . . . In California there is no automatic stay consequent on such an appeal. Provision is made for the imposition of a stay upon the posting of a bond or on application. Appeals have been lodged against the California judgments. Respondents have neither qualified for nor been able to obtain a stay. Respondents submit that if the judgments against them had been obtained in this Court and appeals had been lodged (either to the Divisional Court or the Court of Appeal) the consequent stay would have prevented [enforcement].

*Id.* para. 7-8. The Ontario court rejected this argument. It noted that the defendants were "parties and participants in the California litigation and against whom enforceable judgments [had] been obtained." *Id.* para. 15. It thus concluded that it "would be contrary to the principle of comity of nations for an Ontario Court not to assist the California Courts in enforcing [the plaintiffs'] lawful judgments." *Id.* The Court accordingly granted the plaintiffs' request to take discovery in aid of execution of those judgments. *See id.* para. 2, 22 (granting plaintiff's application "to inquire into the assets and liabilities of . . . judgment debtors").

This result confirms that Rule 63.01 is limited to appeals taken from proceedings *in Ontario*. The court's opinion, that is, acknowledged that Rule 63.01 *would* have applied to a judgment obtained in Ontario, and the court had the opportunity to extend Rule 63.01 to judgments obtained in other jurisdictions, but it chose not to do so. It thus confined Rule 63.01 to cases involving appeals from the judgments of Ontario courts.

 In this case, then, Rule 63.01 is inapplicable. Defendant may have appealed the judgement against him, but because this appeal was not taken from an Ontario court, Rule 63.01

does not impose an automatic stay. Additionally, Defendant has not obtained a stay of enforcement from the Seventh Circuit. Thus, just as in *Four Embarcadero*, the judgment against Defendant is presently enforceable, and just as in *Four Embarcadero*, Canadian law would allow for enforcement notwithstanding Defendant's appeal. As such, even if this Court were inclined to follow Canadian law, the Court would conclude that CCC is entitled to enforce its judgment, such that it is also entitled to pursue discovery related to that enforcement.

### C.  Alleged Undue Burden

Defendant's final argument is that a protective order is necessary because responding to Plaintiff's proposed discovery would impose an undue burden. He notes that "[t]he documents and information which CCC now seeks to compel from Robert Symons . . . and the party which has custody and/or controls them are in Ontario, Canada," [Dkt. 651 ¶ 5], and he contends that it would be "unduly burdensome . . . to have to appear in Indianapolis or Chicago to sit for a deposition[.]" [*Id.* ¶ 6.] He adds that he has "many volumes of documents and/or computers" in Ontario, but asserts that it would be unduly burdensome to move these materials to Indianapolis or Chicago. [*Id.*]

These general assertions of hardship are not sufficient to justify a protective order. As noted above, a party objecting to discovery on the basis of undue burden must specifically demonstrate the burden that the discovery would impose. *See, e.g.*, *Cunningham*, 255 F.R.D. at 478; *see also Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007) (quotation omitted) ("[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."). This showing typically

requires affidavits or other evidence supporting a party's assertions of burden. *See, e.g., Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

Defendant in this case has not met these requirements. He asserts generally that he should not have "to pay for the cost of producing documents" and should not have to bear the "burden and expense" of responding to CCC's requests, [Dkt. 651 ¶ 11], but he offers no further explanation of what that cost or burden would entail. [*See id.*] In addition, he has offered no affidavits or evidence of any kind to substantiate his assertions. His claim of undue burden is thus an unsupported allegation that does not satisfy the requirement that he specifically demonstrate that CCC's requested discovery is improper.[2]

Defendant's assertions are especially unconvincing in light of the factors described in Rule 26. As noted above, that rule directs a court contemplating imposition of a protective order to consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Plaintiff in this case has already obtained a final judgment for more than $34,000,000. [Dkt. 557 at 2.] The only issue remaining in this case is thus enforcement of Plaintiff's judgment, such that discovery in aid of that enforcement is crucial

---

[2] Defendant also briefly argues that CCC's requested discovery is burdensome because it will duplicate discovery in the Canadian proceedings. [Dkt. 659 at 3.] CCC, however, asserts that "[n]o documents have been requested in the Canadian proceedings," [Dkt. 656 ¶ 4], and Defendant's argument thus rests on his assertion that discovery in the Canadian proceedings "will almost certainly occur." [Dkt. 659 at 3.] Again, Defendant offered no affidavits or other evidence to support his speculation about future discovery, and his argument about duplicative discovery thus fares no better than his other arguments on undue burden.

to finally resolving this matter. Moreover, Defendant's vague assertion of burden pales in comparison to the magnitude of Defendant's multimillion-dollar judgment.[3]

Finally, Defendant explained at length why its discovery of documents potentially located in Canada is necessary to execute its judgment. In 2011, G. Gordon Symons initiated a separate lawsuit in Canada in an "attempt to recover assets he had conveyed out of his name" to a "live-in companion." [Dkt. 656 at 4; *see also* Dkt. 656-4 (Ex. C to Mem. in Opp'n to Mot. for Protective Order).] As part of that lawsuit, the companion executed an affidavit stating that in 2009, she and G. Gordon Symons "received news that a company in the U.S. had obtained a USD $34 million Judgement against [G. Gordon Symons] personally, his sons Alan and Douglas, and all of [Symons's companies.]" [Dkt. 656-5 ¶ 90.] G. Gordon Symons then instructed the companion to meet with his lawyers, after which she flew to Florida to "clean out the important papers and contents of [Symons's] safe." [*Id.* ¶¶ 91-92.] Later, the companion executed a second affidavit. [Dkt. 656-7 (Ex. C to Mem. in Opp'n to Mot. for Protective Order).] This time, she stated that, sometime in 2011, "Gordon's children went through [her] personal belongings . . . and removed some of [her] financial documents and **ALL** of Gordon's financial documents for the years 2004 and onwards." [*Id.* ¶ 9 (emphasis original).] Together, these affidavits indicate that Robert Symons likely has "important papers" and "financial documents" related to G. Gordon Symons's assets, such that the documents CCC now seeks are important to its ability to execute its judgment. They are thus "importan[t] . . . in resolving the issues" remaining in this litigation,

---

[3] Defendant, in fact, notes that he is already "working with CCC and its counsel to produce" certain "documents, computers and/or electronic files that have been maintained for the last several years in Canada." [Dkt. 668 ¶ 2.] These documents and files relate to Symons's corporate co-defendants, rather than to the estate of G. Gordon Symons himself, [*see id.*], but Defendant's willingness to produce these materials indicates that there is nothing prohibitively expensive inherent in producing documents and files that are located in Canada.

Fed. R. Civ. P. 26(b)(2)(C), such that limiting the discovery of these documents would be inappropriate.

Defendant nevertheless asserts that alternative procedures exist that would allow CCC to obtain the information it seeks without imposing a burden on Defendant. [Dkt. 651 ¶ 7.] He points to Canadian procedural rules that require certain discovery to be conducted in the country in which the subject of discovery resides, [*see id.*], but such rules are irrelevant. As described above, the Court has rejected Defendant's argument that Canadian law governs these proceedings supplemental. Canadian procedures may apply to CCC's post-judgment proceedings in Canada, but they are no basis for limiting the discovery that CCC seeks to take in the separate post-judgment proceedings through this Court.

Defendant then argues that his status as executor of the Symons estate immunizes him from the discovery CCC seeks. [Dkt. 651 ¶ 11-12.] He states that Robert Symons, "as Executor of the Estate of G. Gordon Symons, is <u>not</u> the same party as G. Gordon Symons," and he contends that Robert Symons is "not a party defendant in the same nature as G. Gordon Symons." [*Id.* ¶ 11 (emphasis original).] He specifically argues that while he "is in place as the Executor of his deceased father's estate," he "has not consented to personal jurisdiction over him by the United States Courts at any time." [Dkt. 659 at 2.] He thus contends that even if discovery about *G. Gordon* Symons's assets is proper, it is unduly burdensome to force *Robert Symons* to produce documents and appear in person in the U.S. [*See id.*; *see also* Dkt. 651 ¶ 11-12.]

The procedural history of this case does not support this argument. Pursuant to Rule 25(a), Robert Symons was substituted for G. Gordon Symons after G. Gordon Symons's death. [Dkt. 441, 469.] As a general matter, a party substituted under this rule "steps into the same

position as the original party," *Hilao v. Estate of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996), such that Robert Symons is in fact a party defendant in "the same nature as G. Gordon Symons."

In addition, Robert Symons specifically waived service of process after learning of CCC's motion to substitute. [Dkt. 469 ("The court took CCC's motion under advisement with respect to the request to additionally substitute Robert Symons, who resides in Canada, due to concerns about the sufficiency of the service of process effectuated upon him under the Hague Convention. Following the hearing, Robert Symons agreed to waive service of process.").] Such a waiver provides a valid basis for the exercise of personal jurisdiction. *See, e.g.*, *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 68 (1st Cir. 2003) ("A defendant may, however, waive service—and waiver can form a valid basis for personal jurisdiction."); *Bak v. Berman Enterprises, Inc.*, No. CV-91-0206 (CPS), 1992 WL 373762, at *2 (E.D.N.Y. Dec. 7, 1992) ("Waiver of service of process confers personal jurisdiction on the Court by consent."); *cf. Martin v. United States*, No. 3:13-CV-03130, 2014 WL 3493233, at *2 (C.D. Ill. July 14, 2014) ("A federal court may not exercise personal jurisdiction over a defendant absent service of process or waiver of service by the defendant."). Defendant maintains that this waiver was executed only in his capacity as executor of G. Gordon Symons's estate, [*see* Dkt. 575], but the fact remains that the waiver *was* executed and this Court thus *does* have personal jurisdiction over Robert Symons.

Moreover, even if this jurisdiction were somehow limited to Robert Symons's capacity as executor of the G. Gordon Symons estate, this limitation is no reason to forbid CCC from conducting its discovery: CCC obtained a judgment against G. Gordon Symons, and Robert Symons is the only representative of the G. Gordon Symons estate. [*See* Dkt. 575 ¶ 1 ("The undersigned counsel appeared (and limited his appearance) on June 27, 2013, on behalf of

Robert T. Symons, as the sole Executor of the Estate of G. Gordon Symons[.]").] To execute its judgment, CCC must thus conduct discovery on Robert Symons. Defendant may have concerns that such discovery could be burdensome, but Defendant could have raised those concerns when the Court initially considered whether substitution was proper. *See, e.g.*, *S & W X-Ray, Inc. v. Film Recovery Sys., Inc.*, No. 84 C 10479, 1987 WL 6626, at *3 (N.D. Ill. Feb. 9, 1987) (noting that court may deny Rule 25(a) motion where "circumstances have arisen rendering it unfair to allow substitution"); *see also Lacy v. Tyson*, No. 1:07-CV-00381-LJO, 2012 WL 4343837, at *1 (E.D. Cal. Sept. 20, 2012) (trial court has discretion to deny substitution "to account for potential unfairness or prejudice"). Additionally, and as described above, any burden that Robert Symons may encounter is insignificant compared to factors such as "the needs of the case," "the amount in controversy," and "the importance of the discovery in resolving" this litigation. Fed. R. Civ. P. 26(b)(2)(C). The Court thus concludes that Defendant's status as successor in interest to G. Gordon Symons does not preclude the discovery CCC seeks to conduct.

Defendant next contends that the assets that CCC ultimately hopes to obtain are located in Ontario, such that CCC "will eventually have to go to Ontario, Canada in order to execute" its judgment. [Dkt. 651 ¶ 9.] Defendant thus argues that it would be senseless to require Symons to produce documents or sit for a deposition outside of Canada. [*See id.*]

Again, Defendant's argument is largely speculative. Defendant offered no substantiation for his claim, and as CCC notes, it has "no way of telling whether relevant documents are located in Canada, the United States, or any other jurisdiction" until "Robert Symons complies with the discovery requests and is deposed." [Dkt. 672 at 10.] Moreover, even if the relevant assets or documents *are* located in Canada, this does not establish that conducting discovery in Canada is appropriate. CCC may eventually need to travel to Canada to execute its judgment, but

speculation about such *later* procedural burdens is no reason to impose an *additional* burden on CCC by requiring it to conduct discovery in Canada as well. Defendant's conjecture about future events thus does not support imposition of his proposed protective order.

Defendant finally argues that granting Plaintiff's motion to compel would not comport with the standard set out in *Reinsurance Co. of America. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275 (7th Cir. 1990) [Dkt. 668 ¶ 3.] There, one party attempted to compel production of documents that were allegedly protected from disclosure by Romanian law. *Id.* at 1277. To resolve the conflict, the Seventh Circuit turned to the Restatement of the Foreign Relations Law of the United States, and stated:

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency of the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the state where the information is located.

*Id.* at 1281-82 (quoting Restatement (Third) of the Foreign Relations Law of the United States § 442)). In this case, Defendant asserts 1) that the information CCC seeks originated outside the United States and 2) that CCC can obtain the information through alternative means, such as CCC's currently pending Canadian actions. [Dkt. 668 ¶ 3.] Defendant thus argues that it would be inconsistent with *Administratia Asigurarilor* to compel responses to CCC's discovery requests. [*Id.*]

As Plaintiff notes, however, the standard articulated in *Administratia Asigurarilor* applies only "[w]hen the laws of the United States and those of a foreign country are in conflict." 902 F.2d at 1279. This case presents no such situation: under U.S. law, Plaintiff can execute its judgment regardless of Defendant's notice of appeal. *See* Fed. R. Civ. P. 62. And under

Canadian law, as described above, the Canadian courts would recognize and allow for enforcement of Plaintiff's judgment, regardless of Defendant's appeal. *See Four Embarcadero*, 1987 CarswellOnt 394, para. 15 ("It would be contrary to the principle of comity of nations for an Ontario Court not to assist the [U.S.] Courts in enforcing [the plaintiffs'] lawful judgments."). Both U.S. and Canadian law thus allow for execution of Plaintiff's judgment, and, as a result, both also allow for the sort of discovery that Plaintiff now seeks to conduct. *See* Fed. R. Civ. P. 69(a)(2) (providing for discovery "[i]n aid of the judgment or execution"); *Four Embarcadero*, 1987 CarswellOnt 394, para. 2, 22 (granting plaintiffs' request "to inquire into the assets and liabilities of [defendants]"). The foreign law at issue in this case thus does not conflict with U.S. law, and this Court has no need to apply the factors described in *Administratia Asigurarilor*.

Moreover, even if the standard from *Administratia Asigurarilor* did apply, the Court would not reach the same conclusion as Defendant. As previously noted, the documents CCC seeks are important in executing its judgment, such that the first factor—"importance to the investigation or litigation," 902 F.2d at 1281—weighs in favor of allowing CCC's proposed discovery. Next, the requests are specific: as this Court has already observed, CCC's discovery requests are "aimed solely at discovering assets of the Defendants that might be recovered to satisfy [CCC's] judgment." [Dkt. 637 at 10 (Order on Mot. for Proceedings Supplemental).] Finally, compelling production will not "undermine important interests of the state where the information is located." 902 F.2d at 1281. To the contrary, Canadian courts acknowledge that "the principle of comity of nations" supports the enforcement of judgments across international borders. *See Four Embarcadero*, 1987 CarswellOnt 394, para. 15

The remaining factors are "whether the information originated in the United States" and "the availability of alternative means of securing the information." *Administratia Asigurarilor*,

902 F.2d at 1282. Defendant contends that all information at issue in this case originated in Canada, [Dkt. 668 ¶ 3], but this is unlikely, given that G. Gordon Symons and his companies operated extensively in the United States. [*See generally* Dkt. 257 (Findings of Fact and Conclusions of Law).][4] Similarly, Defendant asserts that CCC can obtain its information through "alternative means" such as its Canadian lawsuits, but Defendant is currently resisting CCC's efforts to advance those suits. [*See, e.g.*, Dkt. 656-2 (Symons's Statement of Defenses).][5] These factors are thus entitled to little significance and do not outweigh the factors that favor granting Plaintiff's motion to compel. As such, the Court concludes that even if the standard from *Administratia Asigurarilor* did apply, that standard would support granting Plaintiff's current motion. Defendant has therefore failed to carry his burden to show that Plaintiff's requested discovery is improper, and the Court accordingly **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

### III.     Conclusion

For the reasons set forth above, the Court **GRANTS** Continental Casualty Company's Motion to Compel Production, [Dkt. 657], and **DENIES** Robert Symons's Motion for Protective Order Under Federal Rule of Civil Procedure 26(c). [Dkt. 651.] Defendant Robert Symons shall completely and unequivocally respond to CCC's discovery requests within fourteen (14) days of the date of this order.

Date:  03/20/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] Indeed, one of the affidavits from G. Gordon Symons's companion stated that she "[flew] *to Florida*" to "clean out the important papers and contents of [Symons's] safe." [Dkt. 656 ¶ 92 (emphasis added).] It thus rings hollow for Defendant to now assert that "all" records of G. Gordon Symons's estate "have been generated and maintained, at all times, in Ontario, Canada." [Dkt. 668 ¶ 2.]

[5] As noted previously, CCC also asserts that "[n]o documents have been requested in the Canadian proceedings." [Dkt. 656 ¶ 4.] To the extent that CCC has in fact foregone such discovery, this strengthens the conclusion that the Canadian proceedings do not constitute "alternative means" to obtain the information CCC seeks.

Distribution:

Robert M. Baker, III
rbaker@rbakerlaw.net

Scott Alan Kreider
ALERDING CASTOR HEWITT LLP
skreider@alerdingcastor.com

Michael J. Alerding
ALERDING CASTOR LLP
malerding@alerdingcastor.com

Michael H. Michmerhuizen
BARRETT & MCNAGNY LLP
mhm@barrettlaw.com

Samuel J. Thomas
BRESSLER AMERY & ROSS, P.C.
sthomas@bressler.com

Harry  Baumgartner
BRESSLER AMERY & ROSS, PC
hbaumgartner@bressler.com

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

Michael Wesley McBride
COHEN & MALAD LLP
mmcbride@cohenandmalad.com

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Stephanie L. Boxell
FAEGRE BAKER DANIELS
boxellstephanie@gmail.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP - Indianapolis
anne.ricchiuto@FaegreBD.com

Jon  Laramore

FAEGRE BAKER DANIELS LLP - Indianapolis
jon.laramore@faegrebd.com

Robert Francis Wagner
LEWIS & WAGNER
rwagner@lewiswagner.com

Richard K. Shoultz
LEWIS WAGNER LLP
rshoultz@lewiswagner.com

W. Daniel Deane
NIXON PEABODY LLP
ddeane@nixonpeabody.com

Peter S. Kovacs
PETER KOVACS LAW PC
peter@peterkovacslaw.com

James A. Hardgrove
SIDLEY AUSTIN BROWN & WOOD LLP
jhardgrove@sidley.com

Ellen S. Robbins
SIDLEY AUSTIN LLP
erobbins@sidley.com

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP (Indianapolis)
mrabinowitch@woodmclaw.com

Robert L. McLaughlin
WOODEN & MCLAUGHLIN LLP (Indianapolis)
rmclaughlin@woodmaclaw.com