# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IGF INSURANCE COMPANY, et al.,<br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br>　　　　　　Defendant.<br>―――――――――――――――――――<br>CONTINENTAL CASUALTY COMPANY,<br>　　　　　Counterplaintiff and<br>　　　　　Third-Party Plaintiff,<br><br>　vs.<br><br>IGF INSURANCE COMPANY, IGF HOLDINGS,<br>INC., SYMONS INTERNATIONAL GROUP,<br>INC., GORAN CAPITAL, INC, GRANITE<br>REINSURANCE CO., LTDM, SUPERIOR<br>INSURANCE COMPANY, PAFCO GENERAL<br>INSURANCE COMPANY, ALAN SYMONS,<br>DOUGLAS SYMONS, and ROBERT SYMONS,<br>as successor in interest to G. GORDON SYMONS,<br>　　　　　Counterdefendants,<br>　　　　　and Third-Party Defendants,<br><br>　and<br><br>SUPERIOR INSURANCE GROUP, INC. and<br>SUPERIOR INSURANCE GROUP<br>MANAGEMENT, INC.,<br>　　　　　Garnishee Defendants. | No. 1:01-cv-00799-RLY-MJD |

**CONTINENTAL CASUALTY COMPANY'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL PRODUCTION FROM AND IMPOSE SANCTIONS ON
COUNTERDEFENDANT ALAN SYMONS**

Continental Casualty Company ("CCC") submits this memorandum in support of its Motion to Compel Production pursuant to Fed. R. Civ. P. 37(a)(3)(B) and to Impose Sanctions pursuant to Fed. R. Civ. P. 31(a)(3)(A).

## STATEMENT OF FACTS

1. On July 14, 2014, the Court entered an Amended Final Judgment against Counterdefendants Alan G. Symons, Robert Symons, as successor in interest to G. Gordon Symons, IGF Holdings ("IGFH"), Symons International Group, Inc. ("SIG"), Goran Capital, Inc. ("Goran"), and Granite Reinsurance Company ("Granite Re") (the "Judgment Debtors"). Judgment was entered against SIG and IGFH on Count I (breach of contract) of the Amended Counterclaim and against all the Judgment Debtors, jointly and severally, on Counts IV (fraudulent transfer) and V (alter ego).[1] (Dkt. #557.)

2. In its Findings of Facts and Conclusions of Law (Dkt. #257), the Court found that Alan Symons "was, from 1997-2001, the President and CEO of Goran; Vice Chairman and CEO of SIG; Vice Chairman of Granite Re; President and CEO of Superior (Insurance Company). He also served as Vice Chairman for SIG, Pafco (Insurance Company), Superior (Insurance Company), IGFH, and IGF (Insurance Company), and served on the Board of Directors of each Counterdefendant." (Dkt. #257, ¶ 12; *see also* ¶ 168.)

3. In the foregoing capacities, the Court also found that Alan Symons "personally participated in the fraudulent transfers" at issue in the case (Dkt. #257, ¶ 91), "personally participated in the fraud" (Dkt. #257, ¶ 94), and, with his father and brother, controlled the corporate defendants and "collectively received millions of dollars in salaries and loans from Goran, SIG, and Granite Re" (Dkt. #257, ¶ 96), "directly and personally benefitted from their

---

[1] On July 29, 2014, the Judgment Debtors, including Alan Symons, filed a notice of appeal. (Dkt. #564.) However, they have not sought an order staying execution of the judgment nor have they posted a bond.

companies having been enriched at the detriment of CCC as a creditor" (Dkt #257, ¶ 100), "made fraudulent representations to the regulatory agencies and the general public" (Dkt. #257, ¶ 121), "personally participated in the fraudulent transaction at issue in this case, and directly and personally benefitted financially from the fraudulent transaction" (Dkt. #257, ¶ 101).

4. On December 5, 2014, the Court entered an Order Granting in Part and Denying in Part CCC's Motion for Proceedings Supplemental ("Order on Proceedings Supplemental"), which, in aid of execution of the Amended Final Judgment, provided for broad discovery against all the Judgment Debtors, including Alan Symons. (Dkt. #637.) CCC's motion attached a copy of the document requests that it intended to serve. In granting CCC's motion, the Court rejected the Judgment Debtors' contention that the requests were duplicative of earlier discovery or unduly burdensome, finding that both contentions lacked merit. (Dkt. #637 at pp. 10-12.) The Court also concluded that any further objections by the Judgment Debtors were more appropriately addressed in the meet-and-confer process and that, failing agreement, the Judgment Debtors could move for a protective order. (Dkt. #637 at p. 12.)

5. Pursuant to the foregoing Order, on December 8, 2014, CCC served document discovery on the Judgment Debtors, including Alan Symons. (See Exhibit A.) The discovery requests were identical to the requests included with CCC's Motion for Proceedings Supplemental.

6. Notwithstanding the Court's admonitions in its Order on Proceedings Supplemental, counsel for the Judgment Debtors objected to the document requests, principally on grounds that they were overbroad and unduly burdensome, and the parties then engaged in a meet-and-confer process in an effort to resolve their differences. (See Exhibit B detailing communications between counsel.)

7. As part of the meet-and-confer process, counsel for Alan Symons initially did not object to producing responsive documents dated prior to 2011. Instead, he indicated that he did not know whether any such documents existed but would make inquiries regarding same. (See Exhibit B, p. 8, regarding summary of Jan. 27, 2015, meet-and-confer conference.)

8. Subsequently, counsel for Alan Symons advised that no documents dated prior to 2011 would be produced based on an assertion that such information was irrelevant and subject to application of a statute of limitations on fraudulent transfers. (See Exhibit B, p. 6, regarding summary of Feb. 18, 2015, meet-and-confer conference.) Counsel did not then, and has not since, provided any legal authority in support of this position.

9. On Feb. 24, 2015, counsel for Alan Symons produced certain documents, limiting the production to documents dated from 2011 and thereafter. Counsel also did not produce relevant documents known to exist dated in and after 2011 related to known financial accounts and assets of Alan Symons. (See Exhibit C.)

10. On March 12, 2015, CCC's counsel forwarded a deficiency letter to counsel for Alan Symons, asserting that counsel improperly had limited the production in both time and scope. (See Exhibit C.)

11. On March 20, 2015, counsel for Alan Symons forwarded a letter stating that he objected to further production on grounds that the requests were "overly broad and unduly burdensome," that the "applicable statute of limitations for fraudulent transfers … is four years," and that the requests were "duplicative" of previous requests for which documents purportedly were produced years ago. (See Exhibit D.)

12. On March 20, 2015, counsel for CCC responded to the foregoing letter, noting that counsel arbitrarily had interposed "relevancy" and "limitations" arguments for which no

legal support was provided and, further, that counsel had failed to produce documents related to Alan Symons' accounts and assets known to exist in 2011 and thereafter. The communication further advised that the failure to comply with CCC's requests would require intervention by the Court. (See Exhibit E.)

13. In status conferences with the Court on March 23, 2015, and May 4, 2015, counsel advised the Court of the foregoing impasse, and during the May 4 conference, the Court invited motion practice. (Dkt. #695.)

## ARGUMENT

### I. CCC'S REQUESTS FOR PRODUCTION SEEK RELEVANT, NON-PRIVILEGED INFORMATION THAT ALAN SYMONS IS REQUIRED TO PRODUCE.

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if … (iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Rule 37(a)(3)(A) further provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."

For discovery purposes, "relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" Gagan v. Monroe, 2024 U.S. Dist. LEXIS 15918, *10-11 (N.D. Ind. November 10, 2014), *quoting* Chavez v. Daimler Chrysler Corp., 206 F.R.D. 15, 619 (S.D. Ind. 2001), *in turn quoting* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 253 (1978). "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard." Gagan, 2024 U.S. Dist. LEXIS 15918 at 11, *citing* Borom v. Town of Merrillville, 2009 U.S. Dist LEXIS 48442, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009), *in turn citing* Sanyo Laser Prods., Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003); *see also* Adams v. Target, 2001 U.S. Dist. LEXIS 13502, 2001 WL 987853, *1 (S.D. Ind. August 30, 2001) ("for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action"); Shapo v. Engle, 2001 U.S. Dist. LEXIS 26640, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001) ("discovery is a search for the truth."); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill 2006) ("the scope of discovery should be broad in order to aid in the search for the truth").

Moreover, an "objecting party must show with specificity that the request is improper." Gagan, 2024 U.S. Dist. LEXIS 15918 at 11, *citing* Cunningham v. SmithKline Beecham, 255 F.R.D. 474, 478 (N.D. Ind. 2009), *in turn citing* Graham v. Casey's General Stores, 206 F.R.D. 251, 254 (S.D. Ind. 2002). "That burden cannot be met by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Gagan, 2024 U.S. Dist. LEXIS 15918 at 11, *citing*

6

Cunningham, 255 F.R.D. at 478, *in turn citing* Burkybile v. Mitsubishi Motors Corp., 2006 U.S. Dist. LEXIS 57892, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006).

Here, as determined by this Court, Alan Symons "personally participated in the fraudulent transaction at issue in this case, and directly and personally benefitted financially from the fraudulent transaction." (Dkt. #257, ¶ 101.)  He and other family members "collectively received millions of dollars in salaries and loans from Goran, SIG, and Granite Re" to the "detriment of CCC as a creditor." (Dkt. #257, ¶¶ 96, 100.)  These activities began in and continued after 2000, during the time period covered by CCC's discovery requests.  Moreover, as previously demonstrated in CCC's Motion to Compel Production from Robert Symons (Dkt. #656 at 4-5), and as the Court recognized in its Order Denying Robert Symons' Motion for a Protective Order and Granting CCC's Motion to Compel (Dkt. #680 at 15), evidence exists that members of the Symons family engaged in asset transfers during the time period covered by CCC's requests for the sole purpose of frustrating CCC's ability to execute on the Amended Final Judgment.  Now, instead of complying with Court-ordered discovery directed at determining what he did with the money from which CCC was defrauded during a relevant period of time (*i.e.*, 2000-2010), including but not limited to whether he may have transferred assets illicitly, or what other assets he may have to satisfy a judgment for which he is jointly and severally liable, Alan Symons has refused to produce clearly relevant documents based upon improper and unsubstantiated premises, including premises that the Court already declared were without merit.[2]  He does so with the singular objective of denying CCC's ability to collect on an adjudicated debt.  Indeed, what could be more relevant in a case involving a multimillion-dollar fraud perpetuated by Alan Symons for which he is jointly and severally liable than inquiries

---

[2] Moreover, Alan Symons also has not moved for a protective order as referenced by the Court in its Order on Proceeding Supplemental. (Dkt. #637 at 12.)

7

designed to determine Alan Symons' assets during and after the period of time when the fraud was perpetrated? It is therefore imperative that Alan Symons be ordered to completely and immediately produce all responsive documents that will aid in the enforcement of the judgment – exactly as proceedings supplemental are intended.

Additionally, it is appropriate, pursuant to Rule 37(a)(3)(A), that reasonable sanctions be imposed. As evidenced by the foregoing, Alan Symons has failed to cite any legal authority for his position, which position in substantial part contravenes the Order on Proceedings Supplemental and is not in any way justified. He has not participated in good faith in the meet-and-confer process and instead has engaged in "hide-the-ball" conduct, forcing, unnecessarily and at CCC's expense, the within motion. It is this type of conduct for which discovery sanctions are designed. "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." Rickels v. City of South Bend, Ind., 33 F.3d 785, 787 (7th Cir. 1994). To avoid sanctions, the non-complying party must demonstrate "that the movant filed the motion before attempting to obtain the discovery in good faith without court action, its position was 'substantially justified,' or other circumstances make an expense award unjust." Gagan, 2024 U.S. Dist. LEXIS 15918 at 14, *citing* Fed. R. Civ. Pro 37(a)(5)(A).

Here, CCC attempted in good faith over an extended period of time to obtain the discovery without court action and Alan Symons clearly did not reciprocate in good faith. Rather, he has failed in any way to justify – let alone *substantially justify* – his failure to produce clearly relevant documents. Accordingly, CCC is entitled to an order compelling Alan Symons

to pay CCC's costs in pursuing this motion as well as further monetary sanctions should he fail to promptly and fully comply with the order compelling production.

## CONCLUSION

For all of the foregoing reasons, CCC respectfully requests that the Court enter an Order Granting CCC's Motion to Compel Production pursuant to Rule 37(a)(3)(B), and further ordering that Alan Symons pay CCC's costs associated with this motion and imposing further monetary sanctions if Alan Symons fails to comply promptly and fully with the Order to Compel.

Respectfully submitted,

BRESSLER, AMERY & ROSS, P.C.

BY:     /s/ *Harry M. Baumgartner*
           Harry M. Baumgartner

325 Columbia Turnpike
Florham Park, NJ 07932
(973) 966-9675
Email: hbaumgartner@bressler.com

Attorneys for Continental Casualty Company

Dated: June 2, 2015

## **CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing was filed electronically on June 2, 2015.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

| | |
|---|---|
| S. Andrew Burns<br>aburns@cossange4law.com | Peter S. Kovacs<br>peter@peterkovacslaw.com |
| Marc A. Menkveld<br>mmenkveld@silegal.com | Kevin M. Fitzgerald<br>kfitzgerald@nixonpeabody.com |
| Thomas J. Dillon<br>t.dillon@medillaw.com | Michael H. Michmerhuizen<br>mhm@barrettlaw.com |
| Edward Paul Grimmer<br>egrimmer@austgenlaw.com | Michael Rabinowitch<br>mrabinowitch@woodmclaw.com |
| Thomas Andrew Herr<br>tah@barrettlaw.com | Patricia M. Petrowski<br>ppetrowski@sidley.com |
| W. Daniel Deane<br>ddeane@nixonpeabody.com | Arend J. Abel<br>aabel@cohenandmalad.com |
| Ellen S. Robbins<br>erobbins@sidley.com | Michael J. Blinn<br>mblinn@cohenandmalad.com |
| Anne K. Ricchinto<br>Anne.ricchinto@faegrebd.com | Scott Kreider<br>skreider@alerdingcastor.com |
| Jon B. Laramore<br>Jon.Iaramore@faegrebd.com | James A. Hardgrove<br>jhardgrove@sidley.com |

                                        BRESSLER, AMERY & ROSS, P.C.

                                         /s/ Harry M. Baumgartner
                                        Harry M. Baumgartner
                                        325 Columbia Turnpike
                                        Florham Park, NJ 07932
                                        973-996-9675
                                        hbaumgartner@bressler.com
                                        Attorneys for Continental Casualty Co.

2625869