UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SYMONS INTERNATIONAL GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CONTINENTAL CASUALTY COMPANY, )<br>)<br>Defendant. )<br>_____ )<br>CONTINENTAL CASUALTY COMPANY, and )<br>1911 CORP., )<br>)<br>Counterplaintiffs and )<br>Third-Party Plaintiffs, )<br>)<br>vs. )<br>)<br>SYMONS INTERNATIONAL GROUP, INC., )<br>)<br>Counterdefendant, )<br>)<br>and )<br>)<br>GORAN CAPITAL, INC., GRANITE )<br>REINSURANCE COMPANY, LTD., )<br>ALAN G. SYMONS, and G. GORDON SYMONS, )<br>)<br>Counterdefendants and )<br>Third-Party Defendants. )<br>)<br>and )<br>)<br>SUPERIOR INSURANCE GROUP, INC. and )<br>SUPERIOR INSURANCE GROUP )<br>MANAGEMENT, INC., )<br>)<br>Garnishee Defendants. ) | 1:01-cv-00799-RLY-MJD |

**<u>ALAN G. SYMONS' RESPONSE IN OPPOSITION TO
MOTION TO COMPEL PRODUCTION AND IMPOSE SANCTIONS</u>**

Page **1** of **16**

Continental Casualty Company ("CCC") seeks to compel production of unspecified materials dating back to 2000 and to impose sanctions against Alan G. Symons ("Mr. Symons"). In doing so, CCC unfairly accuses him of being uncooperative and attempting to "hide the ball" because he has not responded to the discovery requests to CCC's apparent satisfaction despite the fact that CCC has information about the state of Mr. Symons' assets.

CCC's motion is simply fraught with saber-rattling rhetoric and unsubstantiated accusations when CCC itself has not been clear on all information it believes should be produced and did not follow up with Mr. Symons' counsel to provide further information to facilitated discussion as CCC led counsel to believe. Without specificity, CCC claims that Mr. Symons did not provide all documents known to exist, although it has also represented that duplication of materials previously provided as not desired.

The reality is that Mr. Symons has provided information on his assets on multiple occasions, most recently in response to the formal request for the last four years, and that CCC has been provided with materials to enable it to determine what assets Mr. Symons has to satisfy judgment, which is the only issue for a proceeding supplemental. Its insistence that Mr. Symons should do more is unreasonable, burdensome, and seeks irrelevant information. Accordingly, and as explained more fully herein, its motion should be denied.

## BACKGROUND

1. On October 19, 2009, the Court entered findings of fact and conclusions of law. The Court concluded that certain company entities had fraudulently transferred funds and that Mr. Symons, as an officer and board member, was thus also liable. (See Docket No. 257, ¶¶ 90-101). However, it made no finding that any particular amounts were transferred from the IGF Acceptance Transaction to any particular entity. In fact, the Court noted that Mr. Symons did

not directly and immediately receive any such proceeds. (See Docket No. 257, ¶ 95). Instead, the Court concluded that he had been enriched by virtue of his salary ad loans. Mr. Symons disputes those findings and they are currently under scrutiny on appeal.

2. Notwithstanding those findings and conclusions and the lack of judgment at that time, Mr. Symons voluntarily provided CCC with information regarding his assets in an effort to resolve this matter in 2010 and 2011. The information provided included financial statements, his investments, real estate and personal property he owned, information on companies in which he had an interest, and a valuation of certain companies that had been performed by BKD at his expense. Mr. Symons did not personally retain a copy of the packet of information provided to CCC. (See Exhibit 1, Declaration of Alan G. Symons, ¶¶ 6-8).

3. The Amended Final Judgment was finally entered on July 14, 2014 (See Docket No. 557), and an appeal is pending.

4. Thereafter, CCC filed its Verified Motion for Proceeding Supplemental and proposed serving discovery, seeking 14 years' worth of information. (See Docket No. 576). Mr. Symons objected to the requests at that time, in part because they sought duplicative information that had been provided and also because the requests were unduly burdensome. (See Docket Nos. 588 and 594).

5. The Court permitted CCC to serve its discovery requests. Contrary to CCC's suggestion, although the Court rejected Mr. Symons' arguments at the time, it did not preclude him from asserting any of his objections once he responded. In fact, based on CCC's representations, the Court found CCC's motion as one seeking approval of the initiation of proceedings supplemental and stated that after service the usual discovery process would govern. (See Docket No. 637 at pp. 9-11).

6. Subsequently, Mr. Symons provided his responses to CCC's document requests and renewed his objections that the requests sought duplicative information and were unduly burdensome for seeking 14 years' worth of documents. Mr. Symons also requested an agreed protective order to preserve confidential information prior to actually providing documents to CCC. (See Exhibit 2, Response to Subpoena and Document Requests with Privilege Log)[1].

7. Prior to Mr. Symons providing any further documents to CCC, the parties had a call on January 27, 2015, to discuss the responses as they pertained to Mr. Symons.[2] Contrary to CCC's suggestion that counsel for Mr. Symons "did not initially object to producing responsive documents dated prior to 2011," Mr. Symons had already objected to the requested time period and none of those objections were ever withdrawn, although counsel was willing to consider CCC's arguments. The parties had a follow up call on February 18, 2015, again prior to the release of further documents, at which time counsel for Mr. Symons reasserted his objections and that he had provided everything readily available to him that was related to his assets and that was relevant and noted the four-year statute of limitations for fraudulent transfers that restricted recovery of transferred assets.

8. Although an agreed protective order had not yet been entered, counsel for Mr. Symons agreed to provide CCC's counsel with the additional documents on the condition that

---

[1] Given the volume of documents that have been provided to CCC, Mr. Symons has attached only the written responses. If the Court requests, copies of the actual documents provided to CCC on behalf of Mr. Symons at various times in this litigation can be presented to the Court in electronic or hard copy.

[2] CCC's Statement of Counsel (See Docket No. 702) contains a number of references to teleconferences and emails, many of which were not included with CCC's motion that were not strictly related to a discussion about a dispute with Mr. Symons but instead pertained to the company entities. (See Exhibit 3, Email from January 16, 2015, to January 28, 2015). Counsel for Mr. Symons pointed out the fact that several emails had not been directed at Mr. Symons on January 23, 2015. Further, on January 28, 2015, counsel for Mr. Symons corrected the summary of the January 27, 2015, meet and confer that had occurred.

they would be treated as protected. (See CCC's Ex. B). Those materials, consisting of an additional 451 pages of documents not counting a privilege log, were provided on or about February 24, 2015, to CCC's counsel. (See Exhibit 2 Privilege Log; Decl. of Symons, ¶ 9). These additional documents supplemented the materials that had previously been voluntarily provided to CCC in 2010 and 2011 pertaining to Mr. Symons' assets and were materials that he had in his possession that were readily available and responsive, including tax returns and bank account statements from 2011 forward. (See Decl. of Symons, ¶¶ 9-10, 13). Ultimately, an agreed protective order was entered. (See Docket No. 671).

9.      Thereafter, Charles Schwab responded to the writ of execution confirming that it had no account information for Mr. Symons. (See Docket No 674). In addition, PNC provided responses to interrogatories regarding Mr. Symons' account for which he had produced bank account statements. (See Docket No. 686).

10.     Once the new set of documents for 2011 forward were provided, CCC then waited until March 12, 2015, to provide a deficiency letter on the eve of a status conference with the Court. (See CCC's Exhibit C). At the status conference with the Court the next day, the letter was discussed and CCC's counsel indicated that it would provide authority on the statute of limitations and exchange briefs on the subject. CCC's counsel also confirmed that duplicative information was not being sought and that the parties need not produce materials a second time. Nonetheless, Arend Abel, counsel for several of the corporate entities and Mr. Symons' counsel on appeal, provided CCC with a disc of materials he indicated he believed contained Mr. Symons' financial information that had previously been provided in 2010 and 2011. Based on the discussions from the conference, it appeared that the only issue remaining was CCC's

insistence that materials dating back to 2000 be provided as no particular document during the period of 2011 forward or from the voluntary production in 2010 and 2011 was discussed.

11. Based on the discussion at the March 13, 2015, status conference and the representations made by CC's counsel, counsel for Mr. Symons responded to the deficiency letter on March 20, 2015, outlining that only the concern related to the four-year statute of limitations appeared to remain and noting that CCC had agreed to provide briefing on the issue. (See CCC's Exhibit D). Rather than address the specific issue points raised in the responsive letter or acknowledge the representations that had been made, CCC's counsel responded that same day via email that Mr. Symons' counsel completely misunderstood the dispute and had no authority to support Mr. Symons' objections. CCC's counsel also claimed without explanation, and apparently disregarding the prior representation that production of materials previously provided did not need to be produced again, that Mr. Symons had not produced all documents known to exist such as "investments." (See CCC's Exhibit E). No further information about alleged missing documents or investments was ever provided, nor was any authority exchanged as had been represented would occur.

12. Thereafter, the parties had a telephonic status conference call with the Court on March 23, 2015. Mr. Symons' counsel noted that he was still awaiting the authority and brief that had been proposed by CCC at the prior conference. CCC's counsel acknowledged the representation and indicated that CCC would try to reach out to Mr. Symons' counsel again on the statute of limitations issue. Nonetheless, no follow up occurred and no authority were provided either before or after the next telephonic status conference on April 15, 2015.

13. Following the April 15, 2015, telephonic status conference, the parties exchanged emails regarding a box of documents discovered at the Pafco building that belonged to Mr.

Symons. (See Exhibit 4, Emails from April 23, 2015, through April 27, 2015). Mr. Symons had previously been unaware that the box existed. (See Decl. of Symons, ¶ 12). Mr. Symons' counsel reviewed a disc containing some 195 pages (including the folder labels) of materials spanning from 1995 through 1999 consisting of such things like correspondence, purchases of shares of stock, TD Evergreen statements, and personal banking information that was prepared by the copy service company to determine whether there was anything that should be withheld on the basis of privilege in the box. Shortly thereafter, and with Mr. Symons' permission, Mr. Symons' counsel notified the copy service company that the materials could all be released. (See Exhibit 4; Exhibit 5, Emails from April 27, 2015, to May 4, 2015; Decl. of Symons, ¶ 12).

14. Thereafter, the parties appeared at another telephonic status conference on May 4, 2015. CCC raised its concerns about production of additional materials prior to 2011 along with its assertions that the production was deficient for 2011 forward because not everything known to exist had been provided and that the box of materials from the Pafco building needed to be provided. Mr. Symons' counsel noted that the box had already been reviewed and the copy service company informed that the box could be released. The Court invited CCC to file its motion to compel.

15. Following the call, Mr. Symons' counsel followed up again with the copy service company, who confirmed that the box had already been provided to CCC despite the suggestion to the contrary at the May 4, 2015, status conference. (See Exhibit 5). Presumably CCC has received the box as no further discussion about the same has occurred.

16. At this point, Mr. Symons has provided all information he readily possesses about the current state of his assets consisting of responsive documents spanning 2011 to present, materials he voluntarily provided in 2010 and 2011, and the box of information from 1996

through 1999 discovered at the Pafco building. These materials are in addition to whatever additional documentation is produced by the company entities from the Pafco building and Canada pursuant to the identical requests that were sent to them. He does not have access to additional resources to collect and obtain additional documentation – which does not even reflect his current assets – dating back until the year 2000 because his accounts have been frozen. Nonetheless, he remains open to answering any precise questions about those documents or his assets in response to any interrogatories that are served or deposition that occurs, although nothing aside from the document request has been served. (See Decl. of Symons, ¶¶ 3, 5-6, 9-14).

## ARGUMENT

**1. CCC has not reasonably engaged in the required meet and confer process.**

Here, CCC has not reasonably engaged in a meet and confer process but has simply gone through the motions. It even attempts to lump in discussions regarding the responses of other counter-defendants and garnishee defendants through its recitation of events in the Statement of Counsel. To be clear, CCC had two telephone calls relating to Mr. Symons' production that occurred prior to his production of documents. Afterward, CCC did not follow up via telephone to confer about the statute of limitations issue and never provided any authority to facilitate a discussion of that issue despite twice representing to counsel and the Court that it would do so. Instead, CCC simply sat on the issue.

Further, CCC claims that Mr. Symons has not produced other documents that it knows about from 2011 forward. However, CCC has never identified what those items might be or conferred in person or over the phone with counsel about them. Moreover, obfuscating the issue, CCC's counsel accepted Mr. Symons' objection to providing duplicative materials and

documents that had previously been provided by explicitly stating at the March 13, 2015, status conference that CCC did not need materials produced a second time.

It remains unclear what other materials CCC even means. The only materials explicitly mentioned were generally "investments," something that CCC has also never explained. Assuming CCC means investment accounts, it should be clear to CCC that Mr. Symons has no investment accounts other than the TD Ameritrade account that has been frozen, and CCC has received notice that he does not have a Charles Schwab account. Nonetheless, CCC persists that there are some other documents out in the world that Mr. Symons has not produced. CCC's persistence begs the question of how it knows the documents exist if it does not already have them. Under the circumstances, CCC's counsel should have provided additional information on what it thinks exists but was not provided, or at least followed up with Mr. Symons' counsel as they were led to believe was going to occur.

**2. Mr. Symons has cooperated in the discovery process to provide information about his non-exempt assets, and it is unduly burdensome to expect him to do more.**

As an initial matter, CCC attempts to unfairly portray Mr. Symons as only having provided a limited number of materials for the last four years. To be clear, CCC has been provided with more than four years' worth of materials pertaining to Mr. Symons assets. His formal production simply did not duplicate information that he had already voluntarily provided to CCC in 2010 and 2011, duplication that CCC represented was not desired. Nonetheless, a disc purportedly containing that same information was provided once again to CCC's counsel at the March 13, 2015, status conference. Finally, aside from whatever company records that are being provided for the identical requests, Mr. Symons agreed to produce the entire contents of a box of documents belonging to Mr. Symons with materials from 1996 through 1999 that was discovered at the Pafco building.

As the Court is aware, discovery is not a "fishing" expedition and the interest of the parties must be balanced. *AmCast Industrial Corporation v. Detrex Corporation,* 138 F.R.D. 115, 121 (N.D. Ind. 1991) (citation omitted). This should be particularly true in the context of a proceeding supplemental, the purpose of which is to discovery what assets a judgment defendant has to procure payment of a judgment. (See Docket No. 637 at p. 14, *citing Rice v. Commissioner, Indiana Department of Environmental Management*, 782 N.E.2d 1000, 1004). In fact, the scope of inquiry is limited to the judgment debtor's property, income, and profits "within the county." (See Docket No. 637 at p. 14, *citing Rice*, 782 N.E.2d at 1005). Thus, and as the Court has noted, the only issue remaining at this point is enforcement of judgment. See Docket No. 680 at p. 14). As such, one would expect any discovery to be tailored to that end.

Here, Mr. Symons has not only cooperated with discovery, he has already provided the materials that he readily has on hand. It should not come as a surprise that an individual does not keep outdated documents for some 14 years. Counsel submits that even businesses with a document retention policy do not keep materials for that length of time. Having twice provided information about the state of his assets (once voluntarily in 2010 and 2011 and once in response to CCC's formal requests), and also being willing to answer any follow up questions from an interrogatory or deposition under oath, what more is there for Mr. Symons to do in this case to determine what assets he has to satisfy the judgment? For CCC to insist that he do more unreasonably ignores the purpose of a proceeding supplemental and the information it has already been provided, and it appears to be simply engaging in a fishing expedition to harass Mr. Symons.

Finally, not only is it unreasonable to continue to press for additional information, it is unduly burdensome as Mr. Symons does not possess the resources to recreate documents from

the last fourteen years. He does not and did not maintain copies of outdated records. He did not keep a copy of his prior voluntary production to CCC in 2010 and 2011, which appears to have been reproduced a second time on March 13, 2013, at the status conference. He no longer has any investment accounts other than a TD Ameritrade account that has been frozen. He does not keep company documents (which presumably are available from the company entities) other than what he needs for his personal tax returns. And his only sources of income to pay for recreation of documents that have not been frozen are his social security and rental properties that he uses to pay his expenses. (See Decl. of Symons, ¶¶ 3-5, 7-8, 10-11). In short, he does not possess the means to pay to obtain further documentation dating back to 2000 -- information that does not even reflect the current state of his assets. Having already identified his assets that could be used to satisfy the judgment, the purpose of discovery via production of documents for the proceeding supplemental should be satisfied.

**3.     Documents outside of the four-year limitation imposed by the statute of limitations for fraudulent transfers are not relevant.**

Indiana Fraudulent Transfer Act limits recovery beyond a four-year period after a transfer was made, explicitly extinguishing a cause of action proceeding on a stale claim. *See* Ind. Code § 32-18-2-19. Although Mr. Symons has provided materials outside of the four-year statute of limitations, such materials are not relevant to the dispute. Thus, it is unreasonable to press for Mr. Symons to provide more information, even if he had the ability to do so.

Here, the findings pertaining to fraudulent transfer were made in October 2009, although no specific finding as to any amount being transferred to Mr. Symons was ever made and he was deemed liable on the basis of being an officer and board member and the finding is being contested on appeal. Regardless, CCC was aware of the matter in 2009, and following Mr. Symons' actions of voluntarily providing information in 2010 and 2011, CCC knew about his

assets at that time and could follow up on any transfers reflected in the documentation that was provided at that time (as well as now follow up on the state of those assets since they were previously identified). CCC did not follow up on the assets or the fraudulent transfer finding. That CCC did not pursue the issue or follow up on the information Mr. Symons' provided is not his fault.

Further, mindful of the purpose of a proceeding supplemental, the limitation is not some arbitrary selection of a period of time as CCC asserts. There is no evidence that a particular sum was fraudulently transferred to Mr. Symons, particularly as he never received any funds from IGF and he has not received any funds from any of the company entities since his retirement in May 2002. (See Decl. of Symons, ¶¶ 4-5). Even assuming that there was some evidence that a particular sum was transferred to Mr. Symons, it would be pointless to pursue him for such a transfer at this juncture. Technically CCC would be barred from pursuing a fraudulent transfer action related to those funds as more than four years have passed. But that aside, Mr. Symons is already liable on the judgment unless and until the judgment is overturned on appeal, so any funds he has to satisfy the judgment would be the same regardless of the source of those funds.

The real question then is whether he has otherwise fraudulently transferred assets to someone else to prevent them from collecting on the judgment that was just entered in July 2014. If there were evidence of such a transfer, CCC would then be obligated to pursue the transferee. Again, however, CCC would be barred from pursuing a transferee beyond the statute of limitations. As such, no purpose is served from forcing Mr. Symons to attempt to dredge up 14 years' worth of materials at this point even if he had the means and ability to do so. Further information would not be relevant as it pertains to the purpose of a proceeding supplemental or the limitation on pursuing a fraudulent transfer claim.

**4.      CCC's request for sanctions is inappropriate and should be denied.**

As a final matter, the request for sanctions should be denied based on the circumstances of this case. Sanctions are unwarranted where the movant has not attempted to obtain information in good faith without court action, where the nonmovant's position was substantially justified, or where other circumstances exist to make an award unjust. *See* Fed. R. Civ. Pro. 37(a)(5)(A). That is precisely the situation here.

Mr. Symons has already noted the issues concerning whether CCC reasonably engaged in the meet and confer process when it promised but failed to follow up on issues and where it has not specifically identified or explained the contention that other documents known to exist have not been produced. He has also pointed out his cooperation, the burdensome nature of the request, and relevancy concerns. At the end of the day, CCC has received information from 1996 forward as it pertains to Mr. Symons consisting of (1) materials voluntarily provided in 2010 and 2011 regarding his assets, which appear to have been reproduced again at the March 13, 2015, status conference; (2) materials produced in response to the formal document requests for the period of 2011 forward that were readily available to him; and (3) the box of materials from 1996 through 1999 that was discovered at the Pafco building. This information is in addition to whatever CCC obtains from the companies and third parties. In light of the volume of materials that have been produced, the purpose of a proceeding supplemental, the burden on Mr. Symons to track down outdated information that he does not readily possess, and the statute of limitations on fraudulent transfers, there is no basis for sanctioning Mr. Symons.

CCC nonetheless suggests that Mr. Symons' objections were not proper because of the Court's Order permitting the proceeding supplemental somehow foreclosed those objections. CCC mischaracterizes that Order, which made clear that it was permitting CCC to serve its discovery requests and that the normal discovery process would then ensue. In fact, CCC represented that its motion for the proceeding supplemental sought only that relief. (See Docket No. 637 at pp. 8-9). As such, Mr. Symons was not prohibited from reasserting his objections at the time he responded to the requests.

Finally, apparently to support its request for sanctions, CCC contends that Mr. Symons has done nothing more than try to "hide the ball." The reality is that he has provided abundant information about his assets. Contrary to "hiding the ball," he actually voluntarily provided information to CCC in 2010 and 2011 in an attempt to resolve this matter, and he agreed that the box of old documents from 1996 to 1999 that was discovered at the Pafco building could be provided to CCC. He remains willing to answer any questions under oath through interrogatories or a deposition. Those actions are entirely inconsistent with CCC's portrayal and reveal that Mr. Symons has been cooperative in providing information about his assets. In short, despite CCC's rhetoric, there is no basis for imposing sanctions.

## CONCLUSION

CCC's motion is not appropriate. Consistent with the purpose of a proceeding supplemental to determine what non-exempt assets Mr. Symons might have to satisfy the judgment, CCC has been provided ample information that Mr. Symons readily possesses about his assets. Not only has Mr. Symons cooperated and provided materials that he has readily available to him, CCC presumably has obtained or will obtain information from the companies on their assets and transfers along with information from third parties like Charles Schwab and

PNC.  CCC's efforts to continue pressing for more information from Mr. Symons and insisting that he dredge up 14 years' worth of materials are not reasonable given the extent of the time period, Mr. Symons' resources, the scope of inquiry for a proceeding supplemental, and the limitations on pursuing fraudulent transfer.   CCC has more than enough information regarding the state of Mr. Symons' assets to proceed.  The motion and the request for sanctions should therefore be denied.

        Respectfully submitted,

        *s/ Michael J. Alerding*
        Michael J. Alerding, Atty. No. 20002-49
        Scott A. Kreider, Atty. No. 23038-49
        *Attorneys for Superior Insurance Group Management, Inc., Superior Insurance Group, Inc. and Alan G. Symons*

ALERDING CASTOR HEWITT LLP
47 S. Pennsylvania St., Suite 700
Indianapolis, IN  46204
Phone: (317) 829-1910
Fax: (317) 423-2089
malerding@alerdingcastor.com
skreider@alerdingcastor.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2015, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

| | |
|---|---|
| S. Andrew Burns<br>aburns@cossange4law.com | Peter S. Kovacs<br>peter@peterkovacslaw.com |
| Marc A. Menkveld<br>mmenkveld@silegal.com | Kevin M. Fitzgerald<br>kfitzgerald@nixonpeabody.com |
| Thomas J. Dillon<br>t.dillon@mcdillaw.com | Michael H. Michmerhuizen<br>mhm@barrettlaw.com |
| Edward Paul Grimmer<br>egrimmer@austgenlaw.com | Michael Rabinowitch<br>mrabinowitch@woodmaclaw.com |

| | |
|---|---|
| Thomas Andrew Herr<br>tah@barrettlaw.com | Patricia M. Petrowski<br>ppetrowski@sidley.com |
| W. Daniel Deane<br>ddeane@nixonpeabody.com | Arend J. Abel<br>aabel@cohenandmalad.com |
| Ellen S. Robbins<br>erobbins@sidley.com | Michael J. Blinn<br>mblinn@cohenandmalad.com |
| Anne K. Ricchinto<br>Anne.ricchinto@faegrebd.com | Jon B. Laramore<br>Jon.laramore@faegrbd.com |
| Harry M. Baumgartner<br>hbaumgartner@bressler.com | James A. Hardgrove<br>jhardgrove@sidley.com |

*s/ Michael J. Alerding*
Michael J. Alerding