UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SYMONS INTERNATIONAL GROUP, INC.,    )
BRADFORD T. WHITMORE,                )
                                     )
                Plaintiffs,          )
                                     )        No. 1:01-cv-00799-RLY-MJD
          vs.                        )
                                     )
CONTINENTAL CASUALTY COMPANY,        )
                                     )
                Defendant.           )
_____  )
                                     )
CONTINENTAL CASUALTY COMPANY,        )
1911 CORP.,                          )
SUPERIOR INSURANCE GROUP,            )
                                     )
                Counter Claimants,   )
                                     )
          vs.                        )
                                     )
SYMONS INTERNATIONAL GROUP, INC.,    )
BRADFORD T. WHITMORE,                )
                                     )
                Counter Defendants.  )
                                     )
_____  )
                                     )
SUPERIOR INSURANCE GROUP,            )
BRADFORD T. WHITMORE,                )
                                     )
                Cross Claimants,     )
                                     )
          vs.                        )
                                     )
BOSE MCKINNEY & EVANS LLP,           )
CONTINENTAL CASUALTY COMPANY,        )
BRADFORD T. WHITMORE,                )
SUPERIOR INSURANCE GROUP,            )
                                     )
                Cross Defendants.    )
                                     )

1

_____ )
                                 )
CONTINENTAL CASUALTY COMPANY,    )
1911 CORP.,                      )
                                 )
            Third Party Plaintiffs, )
                                 )
vs.                              )
                                 )
ALAN G SYMONS,                   )
G. GORDON SYMONS,                )
GRANITE REINSURANCE COMPANY,     )
LTD.,                            )
GORAN CAPITAL, INC.,             )
SUPERIOR INSURANCE GROUP,        )
BOSE MCKINNEY & EVANS LLP,       )
ROBERT  SYMONS,                  )
                                 )
            Third Party Defendants. )
                                 )
_____ )
                                 )
Stephen  Cleaver,                )
Virginia  Wright,                )
Maroula  Kyriacou,               )
WILMINGTON TRUST COMPANY,        )
SUPERIOR INSURANCE GROUP         )
MANAGEMENT, INC.,                )
PNC BANK Garnishee Defendant,    )
                                 )
            Garnisheess.          )
                                 )

**ORDER ON MOTION TO COMPEL PRODUCTION AND IMPOSE SANCTIONS**

This matter comes before the Court on Continental Casualty Company's Motion to Compel Production From and Impose Sanctions Against Counter Defendant Alan Symons. [Dkt. 700.] For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

2

## I.        Background

The background of the current dispute is set forth more fully in the Court's prior orders. In brief, this Court on July 14, 2014 entered an Amended Final Judgment in favor of Continental Casualty Company ("CCC") and against Counter-Defendants Alan G. Symons ("Symons"), Robert Symons (as successor in interest of G. Gordon Symons), IGF Holdings, Symons International Group, Goran Capital, Inc., and Granite Reinsurance Company, jointly and severally, in the amount of $34,258,078.00, plus prejudgment interest. [Dkt. 557.] Pursuant to Federal Rule of Civil Procedure 69, CCC thereafter moved for proceedings supplemental. [Dkt. 576.] CCC included with its motion a set of proposed document requests to be served on Alan Symons and the other Counter-Defendants, [Dkt. 576 at 5-6], and CCC requested that the Court authorize service of the requests. [*Id.* at 3.]

The Court granted in part and denied in part CCC's motion. [Dkt. 637.] In so doing, the Court authorized the initiation of proceedings supplemental and authorized CCC to serve its document requests on Alan Symons. [*Id.* at 8-9.] The Court also noted that, after service of the requests, "the usual discovery process [would] govern" the proceedings, such that any resulting discovery disputes would be decided in accordance with the applicable rules of civil procedure and the local rules of this Court. [*Id.*]

Pursuant to the Court's order, CCC served its document requests on Alan Symons and the other Counter-Defendants on December 8, 2014. [Dkt. 701 ¶ 3.] Symons, however, found many of the requests to be overly broad or unduly burdensome, and a lengthy dispute ensued over the proper scope of CCC's discovery. [*See* Dkt. 701-2 (Ex. B to CCC's Motion).]

The dispute culminated in CCC's currently pending Motion to Compel Production From and Impose Sanctions Against Counter Defendant Alan Symons. [Dkt. 700.] CCC asks the Court

to 1) compel production of documents responsive to its discovery requests and 2) order payment of CCC's expenses and fees pursuant to Federal Rule of Civil Procedure 37(a)(3)(A). [Dkt. 701 at 2.] In response, Symons contends that CCC's position is unwarranted because CCC's discovery requests are overly broad and unduly burdensome; and/or because he has already produced all information that is both reasonably available to him and that is responsive to CCC's requests. [Dkt. 714.] Symons also contends that an award of expenses and fees is unjustified because CCC has failed to seek the discovery at issue in good faith without court intervention and/or because his position in this dispute is substantially justified. [*Id.*]

The Court conducted a hearing on the matter on June 25, 2015, and the Court at that time invited supplemental briefing on certain issues. The parties have submitted their responses to the Court's request, [Dkts. 723 & 724], and the matter is now fully briefed.

## II.    Legal Standard

Discovery during proceedings supplemental is conducted in accordance with the same rules that govern pretrial discovery. *See* Fed. R. Civ. P. 69 ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules[.]"); *see also Winforge, Inc. v. Coachmen Indus., Inc.*, No. 1:06-CV-619-SEB-WGH, 2011 WL 5844873, at *2 (S.D. Ind. Nov. 18, 2011) ("[U]nder normal proceedings supplemental to execution, after obtaining a judgment, the judgment creditor will serve the judgment debtor with discovery requests to determine what assets the judgment creditor may be able to collect on from the judgment debtor. According to Rule 69, these discovery requests are treated in the same manner as pretrial discovery requests.").

Rule 26, in turn, governs the scope of discovery. Under this rule, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence, and relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citations omitted); *accord, e.g.*, *Med. Assur. Co. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013) (citing Fed. R. Civ. P. 26(b)(1)) (same).

Rule 37 allows a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). As is relevant to the current dispute, the moving party may specifically seek an order compelling production of documents responsive to the movant's requests for production. Fed R. Civ. P. 37(a)(3)(B). The party resisting such a motion bears the burden to show "with specificity" that the requests for production are improper. *See, e.g.*, *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). General assertions of hardship or conclusory statements that the requested discovery is irrelevant will not suffice. *See id.*

If the non-movant resists the motion on the basis of undue burden, the non-movant must "adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007). This typically requires affidavits or other evidence establishing the cost or time required to provide the requested information. *See, e.g.*, *Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof in the form of affidavits or record evidence."); *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An

objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

Rule 37 also provides for cost-shifting associated with a motion to compel. If the motion is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court, however, shall not do so if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" if the non-movant's nondisclosure "was substantially justified;" or if "other circumstances make an award of expenses unjust." *Id.* A similar analysis applies if the motion is denied, *see* Fed. R. Civ. P. 37(a)(5)(B), and the Court has considerable discretion in awarding costs if the motion is granted in party and denied in part. *See* Fed. R. Civ. P 37(a)(5)(C).

### III.    Discussion

The discovery at issue in this case consists of thirteen requests for documents related to Symons' financial assets. [*See* Dkt. 714-2.] Before responding to any of these requests, Symons interposed numerous general objections on the grounds that the requests sought information that was not relevant; was protected by the attorney-client or work-product privilege; or otherwise was not within the permissible scope of discovery. [*Id.* at 1-4.] Such general objections do not establish "with specificity," *Cunningham*, 255 F.R.D. at 478, that the requests at issue are improper, and such general objections are accordingly entitled to little if any weight. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'[G]eneral objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered.").

The Court therefore **OVERRULES** Symons' general objections, and the Court now turns to Symons' more specific arguments.

### A. Time Period of CCC's Requests

CCC's document requests call for Symons to produce documents related to his financial assets "for the period January 1, 2000 to the present date." [Dkt. 701-1 at 3.] Symons objects to this time period on the grounds that it is overly broad and sweeps in irrelevant information. He asserts that proceedings supplemental are designed to inquire into the assets that a judgment debtor currently has available to satisfy the judgment, such that documents from up to fifteen years ago have little bearing on the current proceedings. [Dkt. 714 at 12.]

In its brief and at the hearing, however, CCC explained the relevance of the time period it selected. First, CCC noted that is has obtained a judgment in excess of $34,000,000 against Alan Symons and others, jointly and severally. [*See* Dkt. 701 at 2.] Next, CCC submitted evidence indicating that Alan Symons reported that his net worth in 1998 was in excess of $8,000,000. [Dkt. 714 at 3 (citing Dkt. 718-1 (Ex. A to CCC's Reply)).] Finally, CCC observed that, in connection with the current motion, Alan Symons executed an affidavit stating that he is at this time essentially impoverished. [*Id.*; *see also* Dkt. 714-1 ¶¶ 3, 11 (Aff. of Alan Symons).]

Based on this evidence, Alan Symons in 1998 had several million dollars in assets that could have been used to partially satisfy the judgment CCC obtained. Now, however, Symons has represented that he lacks access to such assets. Symons thus apparently contends that, at some point between 1998 and 2015, his assets diminished in value; his assets were transferred to other entities; or his assets were otherwise placed beyond his control.

CCC is entitled to test whether this contention is accurate: CCC, that is, has obtained a judgment against Symons, and Symons at one point had assets that could have been collected as

part of that judgment. Those assets allegedly no longer exist, but CCC must now, to quote the

Deep Throat character in *All the President's Men* (Warner Bros. 1976), "follow the money" in

order to determine whether Symons' assets have in fact dissipated, or whether—notwithstanding

his representations—Symons still retains assets that CCC may collect.

     The Court acknowledges that the time period of CCC's requests is broad, but, as

described above, the scope of discovery is also broad. *See Chavez*, 206 F.R.D. at 619. Moreover,

the Federal Rules specifically instruct that a Court should consider the particular circumstances

of a case before imposing a limit on discovery. *See* Fed. Rule Civ. P. 26(b)(2)(C)(iii). Here, the

Court faces a somewhat exceptional situation, as the claim giving rise to CCC's judgment was

filed almost fifteen years ago. Thus, despite the temporal breadth of its requests, CCC actually

seeks information almost exclusively from those years during which this case was pending. This,

in turn, renders it more likely that any transfers or other disposition of Symons' assets were

related to this case, such that the information CCC seeks may indeed be relevant to its current

attempts to execute its judgment.

     In sum, the Court finds that the temporal scope of CCC's discovery requests is

appropriate. Before 2000, Alan Symons had assets that CCC could have used to satisfy its

judgment; now, however, Alan Symons lacks such assets. **Something** happened to those assets in

the intervening years, and CCC is now entitled to serve discovery requests targeting those

intervening years to try to determine what **did** happen.

     Symons then argues that, despite the analysis above, the temporal scope of CCC's

requests is inappropriate in light Indiana's statute of limitations on actions to set aside fraudulent

transfers. [Dkt. 714 at 11-12.] In particular, Indiana law bars such a cause of action if

commenced after "the later of four years after the transfer was made or one year after the transfer

was or could reasonably have been discovered by the claimant." *Hair v. Schellenberger*, 966

N.E.2d 693, 697 (Ind. Ct. App. 2012) (citing Ind. Code § 32-18-2-19)). Symons thus contends

that even if CCC sues any transferees who may have obtained assets from Symons, such a cause

of action would be barred for any transfer that occurred more than four years in the past. As

such, Symons contends that the scope of CCC's requests should be limited to the previous four

years—dating back to 2011—rather than the previous 15 years. [Dkt. 714 at 11-12.]

 This argument is problematic for two reasons. First, CCC notes that the Seventh Circuit

has at least implied, albeit in dicta, that the statute of limitations for a fraudulent transfer cause of

action does not begin to run until the would-be plaintiff has obtained a judgment against the

judgment creditor. [Dkt. 718 at 9 (citing *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 417-

18 (7th Cir. 2014)).] The amended final judgment in this case was entered only in 2014, [*see*

Dkt. 557], and so CCC may still be able to assert a timely fraudulent transfer claim against the

transferees of Alan Symons' assets.

 Second—and more important—the scope of discovery is broad enough that even if the

statute of limitations does bar a fresh cause of action for some claims, CCC's discovery requests

are not improper. As noted above, discoverable information need not be admissible so long as

the discovery appears reasonably calculated **to lead to** the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Here, Alan Symons had several million dollars in assets in 1998.

**Something** evidently happened to those assets in recent years, and CCC must now trace the path

of those assets. By necessity, CCC must begin with the time period during which it knows that

Symons had those assets, and even if this earlier time period is outside the relevant statute of

limitations, this time period is only the beginning: As Symons' discovery responses begin to

reveal what happened to his assets, CCC may learn of additional transfers that occurred later in

time and which may fall inside any applicable statute of limitations. The earliest portions of

CCC's discovery requests are accordingly a mere starting point that, in the end, may reveal

evidence sufficient on which to base a (timely) fraudulent transfer claim. Thus, even assuming

that some of Alan Symons' transfers occurred outside the statute of limitations, CCC's proposed

discovery requests are still "reasonably calculated to lead to the discovery of admissible

evidence," and CCC's discovery requests are therefore proper. *See* Fed. R. Civ. P. 26(b)(1). As

such, the Court **OVERRULES** Alan Symons' objections insofar as those objections rest on the

temporal scope of CCC's requests.

### B.  Breadth and Vagueness Objections

For the time period described above, CCC's document requests call for production of

"all" of Symons' tax returns; for "all" of Symons' financial statements; for "all" records of

Symons' stocks, bonds, and other securities; and for "all" records related to "any" real property,

intangible property, and certain other classes of assets. [Dkt. 701-1 at 3-5.] The requests then call

for production of documents "supporting" the tax returns and financial statements, as well as

documents "regarding," "pertaining to," or "relating to" the records of Symon's securities and

other assets. [*Id.*] Symons objects to these requests on two grounds: he asserts that the terms "all"

and "any" are overly broad; and he asserts that terms such as "supporting" or "regarding" are

vague and ambiguous. [Dkt. 714-2 at 5-10.]

### 1.  Breadth

Whether proposed discovery is overbroad depends on factors such as "the needs of the

case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the action, and the importance of the discovery in resolving the issues." Fed R. Civ. P.

26(b)(2)(C)(iii). Here, the only issue remaining in this litigation is execution of CCC's judgment,

and discovery in aid of that execution could thus scarcely be more important in resolving this case. In addition, the size of CCC's judgment indicates that the "amount in controversy" in this case is substantial, thereby justifying more expansive discovery. These factors thus indicate that broad requests calling for "all" documents that fall within certain categories are not inappropriate.

Next, the Court acknowledges that Mr. Symons submitted an affidavit stating that he lacked the resources to comply with CCC's broad discovery requests. [*See* Dkt. 714-1.] In reply, however, CCC submitted its own evidence indicating that Mr. Symons in recent years reported hundreds of thousands of dollars of income. [*See* Dkt. 718-2 (Symons' tax returns).] The Court thus finds it unlikely that Symons' actually lacks access to the (most likely nominal) resources that may be required to compile and produce his financial records. As such, "the parties' resources," Fed. R. Civ. P. 26(b)(2)(C)(iii), do not justify limiting discovery, and the Court accordingly **OVERRULES** Symons' overbreadth objections.

### 2. Vagueness

Symons asserted in his discovery responses and at the hearing that terms such as "supporting" or "relating to" are too vague to permit a meaningful response. Most of these objections were the sort of unsubstantiated boilerplate that cannot support a valid objection to discovery, [*see* Dkt. 714-2], and the Court accordingly **OVERRULES** these objections. At the hearing, however, Symons' elaborated on his objection to the term "supporting" in the context of his tax returns. He argued that a request for all documents "supporting" his returns could be construed to include every receipt for every transaction in which Symons was involved during a given year, with the implication that such a request would sweep in all manner of irrelevant documents that CCC would have no interest in examining.

11

Such a reading of CCC's discovery requests is untenable. Symons appears to be deliberately reading terms such as "supporting" with an unnaturally broad scope in order to manufacture a vagueness objection where no such valid objection exists. In the context of Symons' tax returns, for instance, documents "supporting" the returns are reasonably viewed not as each and every one of Symons' receipts, but as W-2s (for wages), 1099-INTs (for interest income), 1040s (for capital gains), or other similar forms from which an individual prepares his or her tax return. Symons shall therefore respond to CCC's document request with this understanding of the term "supporting" document in mind, and his vagueness objections are **OVERRULED**.

### C. Burden

Symons asserted in his discovery responses that many of CCC's discovery responses were "unduly burdensome." [*See* Dkt. 714-2.] As with his previous objections, most of these assertions were unsubstantiated boilerplate that cannot support a valid objection, [*see id.*], and the Court accordingly **OVERRULES** these objections.

In his brief and at the hearing, however, Symons further explained his burden objection. Symons asserts that he has provided all responsive documents that he "readily possesses" for the time period 2011 through the present. [Dkt. 714 at 7.] He also argues that he "does not have access to additional resources to collect and obtain additional documentation." [*Id.* at 8.] Symons thus asserts that, even if responsive documents could be obtained from Symons' financial institutions or from other third parties, it would be unduly burdensome for Symons to take proactive steps to obtain such documents. [*See id.*]

The parties disputed at the hearing whether these allegations were a proper basis on which to object to discovery requests. CCC asserted that it would not be at all burdensome for

Symons to obtain responsive documents from, e.g., banks at which he had maintained accounts. Symons, in contrast, asserted that he had no obligation to expend time and effort to recreate or re-obtain records that were not presently in his possession.

To address this issue, the Court asked for further briefing on the scope of Rule 34. [*See* Dkt. 721.] That rule provides that a party may request from another party any document within the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The Court thus asked the parties to address whether this phrase may be construed broadly enough to require the responding party to take proactive steps to obtain responsive documents from persons or entities other than the person on whom the Rule 34 requests were served. [Dkt. 721.]

CCC's response to this request, [Dkt. 723], relies primarily on a Magistrate Judge's order in *Engel v. Town of Roseland*, No. 3:06-CV-430 JTM, 2007 WL 2020171, (N.D. Ind. July 6, 2007), *objections sustained in part and overruled in part*, No. 3:06 CV 430, 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007).[1] The court in that case observed that the prevailing rule is that a "party does not have to actually possess the requested documents to be in control of them." *Id.* at *2 (citing *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977)). Instead, the "test is whether the party has a legal right to control or obtain the documents." *Id.* (citing 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2210 (2d ed.1994)). The court then specifically recognized 1) that "a number of courts have found that a party is in control of his or her tax returns because the party has the legal right to obtain them for a small fee" and 2) that parties have control of their financial documents if "the [parties] have a legal right to obtain those documents from their financial institution." *Id.* at *3 (citations omitted). The

---

[1] The only aspect of the objection to the magistrate judge's ruling that was sustained was a "narrow" objection that had no bearing on the validity of the principles described in the order. *See Engel v. Town of Roseland*, No. 3:06 CV 430, 2007 WL 2903196, at *1 (N.D. Ind. Oct. 1, 2007).

court thus ordered the non-responsive party to "make a good faith and reasonable effort to obtain and produce the documents" that the opposing party sought. *Id.* at *4.

Symons's response does not dispute the basic principles described in *Engel*. [*See* Dkt. 724 at 2 (citation omitted) ("The phrase [possession, custody, or control] has been interpreted to encompass constructive possession.").] Symons, however, notes that the requesting party generally has the burden to establish that the respondent does in fact have control of the documents at issue. [*Id.* (citing *McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am.*, 160 F.R.D. 691, 695 (S.D. Ind. 1993)).] He asserts that CCC has not met this burden in this case, and he notes that some of his accounts have been frozen, such he allegedly has no legal right to force the financial institutions operating those accounts to produce any records. [*Id.* at 2-3.]

Based on the parties' submissions, the Court rules as follows: first, CCC's Request for Production No. 1 asks for "[a]ll federal and state income tax returns, and all records supporting such returns." [Dkt. 714-2 at 4.] Because "a number of courts have found that a party is in control of his or her tax returns," *Engel*, 2007 WL 2020171 at *3, the Court **ORDERS** Symons to produce complete copies of all federal and state tax returns for each year within the temporal scope of CCC's requests, i.e., January 2000 through the present. Symons is similarly **ORDERED** to produce all documents supporting those returns—e.g., W-2s, 1099-INTs, 1040s, or other similar documents—for all years within the temporal scope of CCC's requests.

The next set of CCC's requests ask for documents such as "financial statements" (Request No. 2), "records of banking and financial transactions" (Request No. 3), "records and documents regarding stocks" and other securities (Request No. 4), and records regarding intangible or real property (Requests Nos. 5 and 6). As explained in *Engel*, Symons has "control"

of these records if he has a "legal right" to force the institutions that maintain the records to produce them. *See* 2007 WL 2020171, at *3. The Court accordingly **ORDERS** Symons to contact the financial institutions that may have records responsive CCC's Requests Nos. 2 through 6 and to make a good faith and reasonable effort to obtain those records from those financial institutions. If, after making this effort, Symons determines that he no longer has a legal right to require the production of the records—because, for example, the institution does not provide records for parties with accounts that are no longer active—then Symons shall affirmatively state as much in his responses to CCC's requests, identifying therein the institutions or entities that denied his requests and the relevant account numbers at such institutions or entities.

Next, CCC's discovery requests ask for documents related to "any property or assets purchased, sold, transferred or encumbered by any Judgment Debtor or Garnishee Defendant." [Dkt. 714-2 at 7 (Request No. 7).] The requests similarly ask for information about any "accounts receivable," "amounts owed," "property owned or possessed," "ledgers and accounts," and "shares of stock or debt" owned by the Judgment Debtors or Garnishee Defendant. [*Id.* at 8-10 (Requests Nos. 9, 10, 11 & 13).] These requests are problematic insofar as they ask for records relating not to Alan Symons himself, but to the Judgment Debtors and the Garnishee Defendants in general. These records thus may be in the possession of entities other than Alan Symons, and Alan Symons may lack any legal right to force these entities to divulge such records.

At the same time, however, the Court recognizes that Judge Young previously determined that Alan Symons owned stock in and was an officer of some of the Judgment Debtors and Garnishee Defendants. [*See, e.g.*, Dkt. 257 ¶¶ 10, 12.] It is therefore likely that Alan

15

Symons does in fact have possession of certain records that are responsive to CCC's Requests Nos. 7, 9, 10, 11 and 13.

To resolve this conflict, the Court **ORDERS** Alan Symons to provide a complete and unequivocal response to Requests Nos. 7, 9, 10, 11 and 13 insofar as he shall produce all responsive documents currently in his **possession**. In complying with this aspect of the Court's order, Symons need not contact the other Judgment Debtors or Garnishee Defendants or otherwise attempt to obtain documents from other parties. This will obviate any issue that may arise regarding Symons' legal right to force the Judgment Debtors or Garnishee Defendants to divulge responsive records. In addition, CCC's discovery requests indicate that they have served these requests on each of the Judgment Debtors and Garnishee Defendants. [*See* Dkt. 701-1 at 3.] Thus, to the extent that any responsive documents exist but are not currently in Alan Symon's possession, CCC will obtain those documents through the requests served on the other Judgment Debtors and Garnishee Defendants themselves. The Court will consider modification of this limitation if, after further discovery, CCC is able to demonstrate that Alan Symons has constructive possession of responsive documents that are in the physical possession of an individual or entity other than the Judgment Debtors or Garnishee Defendants.

CCC's Request No. 8 asks for all documents "relating to any property or asset acquired by family members in the past 180 days." [Dkt. 714-2 at 7.] CCC has not provided any evidence suggesting Alan Symons has a legal right to force his family members to produce documents, and CCC therefore has not met its burden to establish that Alan Symons has control over any such documents that are currently in the possession of his family members. *See Engel*, 2007 WL 2020171 at *2; *McBryar*, 160 F.R.D. at 695. Symons is accordingly **ORDERED** to provide a complete and unequivocal response to this request by producing all responsive documents that

16

are currently in his possession, but Symons need not contact his family members or attempt to obtain any additional responsive documents from such family members. The Court will consider modification of this limitation if, after further discovery, CCC is able to demonstrate that Alan Symons has constructive possession of documents that are responsive to Request No. 8 but that are in the physical possession of individuals or entities other than Symons' family members.

CCC finally seeks all records "relating to any amount owed a creditor, including the identity of the creditor, the amount owed, when the debt was incurred, the basis for the debt owed, the identity of any joint debtor, and any relationship of the creditor to the debtor." [Dkt. 714-2 at 9 (Request No. 12.).] Whether Alan Symons has a legal right to force his creditors to divulge any records may depend on the nature of the contracts or liabilities giving rise to the debts. The Court accordingly **ORDERS** Alan Symons to provide a complete and unequivocal response to this request by producing all responsive documents that are currently in his possession. For any debt for which the documents currently in Symons' possession do not completely explain the "identity of the creditor, the amount owed, when the debt was incurred, the basis for the debt owed, the identity of any joint debtor, and any relationship of the creditor to the debtor," Symons shall contact the creditor and make a good faith and reasonable effort to obtain documents that do completely respond to CCC's inquiries. If, after making this effort, Symons determines that he has no legal right to require the creditor to produce the records, then Symons shall affirmatively state as much in his responses to CCC's requests, identifying therein the creditor at issue and the relevant account numbers for such debts.

In complying with these orders, Symons is reminded that the Court—as explained above—has overruled Symons' vagueness, overbreadth, and temporal scope objections. Symons therefore shall not rely on or withhold documents on the basis of these objections. Further, the

Court notes that, in seeking records from his financial institutions or other entities, Symons may encounter nominal costs. *See, e.g.*, *Engel*, 2007 WL 2020171, at *3 ("[A] party is in control of his or her tax returns because the party has the legal right to obtain them for a small fee."). Symons asserts that he lacks the resources the pay for such nominal costs, [Dkt. 714 at 8; Dkt. 724 at 3-4], but CCC—as explained above—has submitted evidence to the contrary. Symons therefore shall not withhold or fail to obtain any documents on the grounds that his financial institution or another party would require a small or nominal fee for the production of the records at issue.

### D. Cost-Shifting

As noted above, Federal Rule of Civil Procedure 37 provides for cost-shifting in the event that a court grants or denies a motion to compel. *See* Fed. R. Civ. P. 37(a)(5). Here, the Court has granted CCC's motion in part and has denied CCC's motion in part, insofar as the Court has overruled many of Symons' objections but has sustained at least portions of Symons' argument that certain documents are outside his "possession, custody, or control." In such circumstances, the Court has significant discretion in deciding whether to shift the costs associated with a motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

The Court finds it most appropriate in this case for each side to bear its own costs. Although many of Symons' objections were unsound, compliance with the Court's order will already require a significant expenditure of time and effort on Symons' part. In addition, Symons grounded many of his objections not an arbitrary desire to avoid his discovery obligations, but on

his (albeit unpersuasive) understanding of the Indiana law of fraudulent transfers. [*See* Dkt. 714 at 11-12.]  The Court thus finds that Symons' position was not so unreasonable as to warrant an award of costs in CCC's favor.

### IV.    Conclusion

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Continental Casualty Company's Motion to Compel Production From and Impose Sanctions Against Counter Defendant Alan Symons. [Dkt. 700.] Alan Symons shall provide complete and unequivocal responses to CCC's document requests as set forth above within twenty-one (21) days of the date of this order.

Date:  07/15/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert M. Baker, III
rbaker@rbakerlaw.net

Scott Alan Kreider
ALERDING CASTOR HEWITT LLP
skreider@alerdingcastor.com

Michael J. Alerding
ALERDING CASTOR LLP
malerding@alerdingcastor.com

Michael H. Michmerhuizen
BARRETT & MCNAGNY LLP
mhm@barrettlaw.com

Samuel J. Thomas
BRESSLER AMERY & ROSS, P.C.
sthomas@bressler.com

Harry  Baumgartner
BRESSLER AMERY & ROSS, PC
hbaumgartner@bressler.com

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

Michael Wesley McBride
COHEN & MALAD LLP
mmcbride@cohenandmalad.com

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Stephanie L. Boxell
FAEGRE BAKER DANIELS
boxellstephanie@gmail.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP - Indianapolis
anne.ricchiuto@FaegreBD.com

Jon  Laramore
FAEGRE BAKER DANIELS LLP - Indianapolis
jon.laramore@faegrebd.com

Robert Francis Wagner
LEWIS & WAGNER
rwagner@lewiswagner.com

Richard K. Shoultz
LEWIS WAGNER LLP
rshoultz@lewiswagner.com

W. Daniel Deane
NIXON PEABODY LLP
ddeane@nixonpeabody.com

Peter S. Kovacs
PETER KOVACS LAW PC
peter@peterkovacslaw.com

James A. Hardgrove
SIDLEY AUSTIN BROWN & WOOD LLP
jhardgrove@sidley.com

Ellen S. Robbins
SIDLEY AUSTIN LLP
erobbins@sidley.com

Michael  Rabinowitch
WOODEN & MCLAUGHLIN LLP (Indianapolis)
mrabinowitch@woodmclaw.com

Robert L. McLaughlin
WOODEN & MCLAUGHLIN LLP (Indianapolis)
rmclaughlin@woodmaclaw.com